UNITED STATES BANKRUPTCY COURT                    NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
In re:                                             :
                                                   :   Case No. 19-10412 (JLG)
Ditech Holding Corporation, *et al.*,              :   Chapter 11
                                                   :
                                                   :   (Jointly Administered)
                                Debtors.[1]        :
--------------------------------------------------------- x
--------------------------------------------------------- x
Michael McChristian,                               :
                    Plaintiff,                     :
                                                   :
v.                                                 :
                                                   :   Adversary Case No. 19-01137 (JLG)
                                                   :
Ditech Holding Corporation, Green Tree             :
Credit LLC, and Breckenridge Prop Fund             :
2016 LLC,                                           :
                    Defendants.                    :
--------------------------------------------------------- x

## MEMORANDUM DECISION AND ORDER GRANTING DEBTORS' MOTION TO DISMISS PLAINTIFF'S ADVERSARY COMPLAINT

**A P P E A R A N C E S :**

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Ditech Holding Corporation*
*and Green Tree Credit LLC*
767 Fifth Avenue
New York, New York 10153
<u>By:</u>   Ray C. Schrock, P.C.
      Richard W. Slack, Esq.
      Sunny Singh, Esq.

Joseph C. La Costa, Attorney at Law
*Attorneys for Michael McChristian*
7860 Mission Center Court, Suite 103
San Diego, CA 92108
<u>By:</u>   Joseph C. La Costa, Esq.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837). The Debtors' principal offices are located at 1100 Virginia Drive, Suite 100, Fort Washington, Pennsylvania 19034.

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

In 2005, Michael McChristian (the "Plaintiff") purchased the premises located at 11118

Ironwood Drive, San Diego, California (the "Property"). He financed the acquisition with a loan

from Homecoming Financial Network Inc. ("Homecomings"). In that transaction, the Plaintiff

executed a promissory note (the "Note") and a deed of trust (the "Deed of Trust") to secure

payment of the Note. Green Tree Servicing LLC ("Green Tree") is the assignee of the Deed of

Trust.[3] In January 2019, Clear Recon Corp., as trustee under the Deed of Trust, sold the Property

to Breckenridge Property Fund 2016 LLC ("Breckenridge") at a nonjudicial foreclosure sale.

Breckenridge subsequently sued the Plaintiff in the California Superior Court to evict him from

the Property. The Plaintiff resolved that litigation by stipulating to the entry of judgement by the

state court in favor of Breckenridge which, without limitation, vested Breckenridge with title to

the Property, and pursuant to which he surrendered possession of the Property to Breckenridge.

In this adversary proceeding, the Plaintiff is suing Green Tree, Ditech Holding

Corporation Mortgage, LLC ("Ditech," with Green Tree, the "Ditech Defendants") and

Breckenridge (with the Ditech Defendants, the "Defendants"), to unwind the foreclosure sale on

the grounds that the assignments of the Deed of Trust were defective and, as such, the seller

lacked authority to sell the Property. He also seeks damages from the Ditech Defendants

---

[2]    Capitalized terms used but not otherwise defined in the Introduction shall have the meanings ascribed to them
herein. References herein to "ECF No. __" are to documents filed in the electronic docket in these jointly
administered cases *In re Ditech*, Case No. 19-10412 (the "Chapter 11 Cases"). References to documents filed in this
adversary case, *Michael McChristian v. Ditech Holding Corporation, et. al,* Adversary Case No. 19-01137, shall be
cited as "[AP ECF No. __]".

[3]    Green Tree Credit LLC is named as a defendant in the Complaint, but the Corporate Assignment of Deed of
Trust, annexed as Exhibit C to the Slack Declaration, names Green Tree Servicing LLC as the assignee of the Deed
of Trust. The Court understands that the Plaintiff is suing Green Tree Servicing LLC.

occasioned by their alleged negligence and bad acts prior to the foreclosure sale in servicing the Note. The Plaintiff, through his counsel of record, filed a proof of claim in these Chapter 11 Cases which, as amended, seeks $5 million in damages based on "Litigation." One or both of the Ditech Defendants are named defendants in each of the nine counts alleged in support of the Complaint. Two of the counts seek monetary damages; the remaining counts seek different forms of equitable relief.

The matter before the Court is the Ditech Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[4] to dismiss the Complaint, with prejudice (the "Motion").[5] In support of the Motion, the Ditech Defendants assert that the Complaint is procedurally improper because claims for money damages for prepetition conduct are properly brought through the bankruptcy claims resolution process in these Chapter 11 Cases, not in an adversary proceeding. They maintain that since the Plaintiff has filed a $5 million proof of claim based on "Litigation," which he filed simultaneously with the commencement of this adversary proceeding, he has acknowledged that all the claims at issue in the Complaint, can be reduced to a monetary judgment and, as such, the Court should dismiss the Complaint, in favor of the claims resolution process. They also contend that the claims that Plaintiff purports to assert in the Complaint are barred by application of the doctrines of *res judicata* and judicial estoppel. The Plaintiff opposes the Motion.[6]

---

[4] Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[5] *See Debtors' Motion to Dismiss Plaintiff's Adversary Complaint* [AP ECF No. 12]. *See also Declaration of Richard W. Slack in Support of Debtors' Motion to Dismiss Plaintiff's Adversary Complaint* [AP ECF No. 12-1] (the "Slack Declaration").

[6] *See 1) Plaintiff's Opposition to Defendant Ditech Holding Corporation Mortgage, Green Tree Credit LLC Motion to Dismiss the Complaint; 2) Plaintiff's Motion for Permission to File an Amended Complaint* [AP ECF No. 18] (the "Opposition").

For the reasons set forth herein, the Court grants the Motion and dismisses the Complaint, with prejudice.

## Jurisdiction

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background[7]

On February 18, 2005, Plaintiff executed the Note in the amount of $326,000.00 to finance the purchase of the Property. As security for the Note, the Plaintiff executed the Deed of Trust which was recorded with the County of San Diego on February 28, 2005. *See* Deed of Trust.[8] The Deed of Trust identified Homecomings as the lender and Mortgage Electronic Registration Systems, Inc. ("MERs") as nominee for the lender and beneficiary of the Deed of Trust. *See id.* Pursuant to an assignment recorded on September 17, 2010, MERs assigned its beneficial interest in the Deed of Trust to GMAC Mortgage, LLC ("GMAC"). *See* Assignment

---

[7]    The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). In resolving a motion to dismiss, the Court is "free to consider documents that are incorporated into the complaint by reference or attached to the complaint as exhibits, or whose terms and effect are relied upon by the plaintiff in drafting the complaint." *Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC,* 298 F.3d 136, 140 (2d Cir. 2002). *See also Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–54 (2d Cir. 2002) ("For purposes of this rule, 'the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'") (citation omitted); *In re Spiegel, Inc.,* 337 B.R. 821, 824 (Bankr. S.D.N.Y. 2006) ("Documents whose terms and effect are relied upon by the plaintiff in drafting the complaint may be considered on a motion to dismiss, even if the documents are not submitted as exhibits by the plaintiff.") Moreover, when evaluating the adequacy of a complaint, a court may also consider exhibits that are subject to judicial notice, without converting a motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles,* 250 F.3d 668, 689 (9th Cir. 2001). A court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distributors, Inc.,* 798 F.2d 1279, 1282 (9th Cir. 1986). In reviewing the facts relevant to the Motion, the Court will take judicial notice of the documents in the exhibits annexed to the Slack Declaration.

[8]    A copy of the Deed of Trust is annexed as Exhibit A to the Slack Declaration.

of Deed of Trust.[9] In turn, on February 16, 2015, GMAC assigned the Deed of Trust to Green

Tree. *See* Corporate Assignment of Deed of Trust.[10]

In 2011, the Plaintiff filed for bankruptcy. Compl. ¶ 17.  In October 2012, the Plaintiff

was approved for a loan modification with GMAC. *See id.* ¶ 19. However, in January 2013,

GMAC notified the Plaintiff that his loan and mortgage had been transferred to Green Tree. *See*

*id.* ¶ 20. Over the next several months, the Plaintiff had multiple communications with various

representatives at Green Tree concerning the loan modification, account statements, and the

transfer of his loan from GMAC to Green Tree. *See id.* ¶¶ 21-32. In or about June 2013, the

Plaintiff received notification from Green Tree that his loan modification was approved and

finalized. *See id.* ¶ 33.

The Plaintiff contends that beginning in December 2013 and continuing to December

2014, he received notices of past due payments and notices of default from Green Tree which

were erroneous, as well as an offer to enter into another loan modification. *See id.* ¶¶ 38-59.  He

asserts that beginning in January 2015 and into 2017, he received notices that his loan was in

default and the Property was going into foreclosure. *See id.* ¶¶ 60-73. *See also* Notice of Default

recorded Nov. 29, 2016.[11] The Plaintiff does not dispute that he was in arrears under the Note but

disputes the amount claimed due and owing under the notices. *See* Compl. ¶ 75. By Notice of

Trustee Sale dated November 15, 2017, a foreclosure sale of the Property was scheduled for

January 5, 2018. *See* Notice of Trustee Sale;[12] *see also* Compl. ¶ 74 (noting the sale was

scheduled for January 1, 2018).

---

[9]    A copy of the Assignment of Deed of Trust is annexed as Exhibit B to the Slack Declaration.

[10]    A copy of the Corporate Assignment of Deed of Trust is annexed as Exhibit C to the Slack Declaration.

[11]    A copy of the Notice of Default is annexed as Exhibit D to the Slack Declaration.

[12]    A copy of the Notice of Trustee Sale is annexed as Exhibit E to the Slack Declaration.

In April 2018, to avoid foreclosure of the Property, the Plaintiff commenced a case under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California (the "Chapter 13 Case"). *See* Compl. ¶ 79. In support of that case, the Plaintiff filed Schedule A/B.[13] In that schedule, the Plaintiff was asked to "Describe Your Financial Assets," and, in particular to state whether he "own[ed] or [had] any legal or equitable interest" in (i) "[c]laims against third Parties, whether or not you have filed a lawsuit or made a demand for payment;" or (ii) "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor or any rights to setoff claims." *See* Schedule A/B, Part 4 ¶¶ 33, 34. The Plaintiff responded "No" to both questions; he did not identify any claims against Green Tree or Ditech concerning his Note and mortgage, any claims, or rights to set off against Green Tree, or the proposed foreclosure sale of the Property. *See id.* The Plaintiff did not confirm a plan in the Chapter 13 Case. On December 4, 2018, the bankruptcy court dismissed the case without prejudice. *See* Compl. ¶ 80.

After the court dismissed the Chapter 13 Case, Clear Recon Corp., as trustee under the Deed of Trust, sold the Property at a nonjudicial foreclosure sale (the "Foreclosure Sale") to Breckenridge for the sum of $593,500.00. On January 15, 2019, the trustee, recorded a Trustee's Deed Upon Sale to Breckenridge. *See* Trustee's Deed Upon Sale.[14] On January 23, 2019, Breckenridge commenced an unlawful detainer eviction action in the Superior Court for the State of California – San Diego County (the "California Superior Court") against the Plaintiff for damages and to obtain possession of the Property (the "Unlawful Detainer Action"). *See*

---

[13]    A copy of Schedule A/B filed in the Plaintiff's Chapter 13 Case  is annexed as Exhibit F to the Slack Declaration.

[14]    A copy of the Trustee's Deed Upon Sale is annexed as Exhibit G to the Slack Declaration.

Complaint for Unlawful Detainer Action.[15] In his answer to the Unlawful Detainer Action, the Plaintiff raised affirmative defenses, including that the trustee's sale was invalid and did not convey clear title to Breckenridge. *See* Answer - Unlawful Detainer Action ¶ 3.[16] The Plaintiff and Breckenridge subsequently entered into a Stipulated Agreement for Judgment or Dismissal the ("Stipulated Judgment").[17] Pursuant to the judgment, Plaintiff agreed to surrender possession of the Property to Breckenridge at 3:00pm on July 8, 2019 and to pay a monetary judgment of $23,019.56 for sanctions in Breckenridge's favor. Stipulated Judgment at 2. The parties agreed that judgment for Breckenridge in the Unlawful Detainer Action "will be entered now." *Id.* The Stipulated Judgment conclusively resolved the complaint filed in the Unlawful Detainer Action in favor of Breckenridge.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court. Thereafter, the Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[18]

---

[15]    A copy of the Complaint for Unlawful Detainer Action is annexed as Exhibit H to the Slack Declaration.

[16]    A copy of the Answer - Unlawful Detainer Action is also annexed as Exhibit H to the Slack Declaration.

[17]    A copy of the Stipulated Judgment is annexed as Exhibit J to the Slack Declaration.

[18]    *See Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1326]; *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1404]. *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* [ECF No. 1449].

On February 22, 2019, the Court entered an order fixing April 1, 2019 at 5:00 p.m.

(prevailing Eastern Time) as the deadline for each person or entity, not including governmental

units (as defined in section 101(27) of the Bankruptcy Code) to file a proof of claim in the

Debtors' Chapter 11 Cases (the "General Bar Date").[19] The Court extended the General Bar Date

for consumer borrowers, twice, and ultimately to June 3, 2019 at 5:00 p.m. (prevailing Eastern

Time).[20] On May 16, 2019, (the day after he filed the Complaint) Plaintiff, through his counsel of

record herein, timely filed a proof of claim against Ditech asserting an unsecured claim based in

"Litigation" in the sum of $650,000.00. *See* Proof of Claim No. 22397.[21] On January 13, 2020,

the Plaintiff amended the claim by filing Proof of Claim No. 24671, which asserts an unsecured

claim of $5 million based in "Litigation."

**The Adversary Proceeding**

On May 15, 2019, the Plaintiff commenced this adversary proceeding by filing the

Complaint.[22] In substance, in the Complaint, the Plaintiff challenges the validity of the

Foreclosure Sale. Plaintiff says that the sale was not authorized because the assignments of the

beneficial interests in the Note and Deed of Trust to Green Tree were defective. He also asserts

that the Ditech Defendants improperly collected monthly payments from the Plaintiff on account

of the Note when they knew that it did not have the legal authority to do so and were not the

rightful assignees of the Note and Deed of Trust. He says that that Green Tree did not have the

---

[19]   *See Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* [ECF No. 90] (the "Bar Date Order").

[20]   *See Order Further Extending General Bar Date for Filing Proofs of Claim for Consumer Borrowers Nunc Pro Tunc* [ECF No. 496].

[21]   A copy of Proof of Claim No. 22397 is annexed as Exhibit I to the Slack Declaration.

[22]   *See Verified Complaint for: 1. Declaratory Relief [28 U.S.C. §§ 2201, 2202] 2. Quasi Contract 3. Negligence 4. Violation of 15 U.S.C. §1692, et. seq. 5. Violation of California Business and Professions Code Section 17200, et. seq. 6. Accounting 7. Cancellation of Instruments 8. Set Aside Trustee's Sale* [AP ECF No. 1] (the "Complaint" herein cited as "Compl.").

right to foreclose and sell his Property to Breckenridge at the Foreclosure Sale. The Complaint

contains nine causes of action. At least one of the Ditech Defendants is named as a defendant in

each of the nine Counts described below.

> Count 1:  Declaratory Relief to determine the status of Defendants' Claims
> (pursuant to 28 U.S.C. §§ 2201, 2202)–seeking a declaration that the Defendants
> "have no right or interest in Plaintiff's Note, Deed of Trust, or the Property, which
> authorizes them, in fact or as a matter of law, to any benefit or right set forth in
> the Note and Deed of Trust, and consequently the 'sale' to Breckenridge is and
> was void an [sic] without any force or effect" and a determination of whether
> Ditech and Breckenridge's claims are enforceable.  *See* Compl. ¶¶ 145, 147.  The
> plaintiff also seeks punitive damages in an amount to be determined at trial.  *Id.* ¶
> 148.

> Count 2: Quasi Contract. The Plaintiff contends that the Ditech Defendants did
> not have the authority to collect payments from him and have been unjustly
> enriched by such payments.  The Plaintiff seeks restitution of the payments he
> made to the Ditech Defendants. *Id.* ¶¶ 152-153.

> Count 3:  Negligence. The Plaintiff alleges that the Ditech Defendants owed him a
> fiduciary duty to exercise reasonable care in servicing his Note and mortgage, but
> failed to exercise such care, causing him to overpay amounts due and owing under
> the Note and mortgage. He maintains that the Ditech Defendants' recklessness,
> blatant fraud with respect to the chain of title and holding themselves out to be
> creditors (when in fact, they had no pecuniary interest therein) rendered the
> Property potentially unsaleable. The Plaintiff seeks damages to be determined at
> trial.  *See id.* ¶¶ 155-158**.**

> Count 4:  Violation of 15 U.S.C. §1692, *et seq*. (the Fair Debt Collection Practices
> Act or "FDCPA"). The Plaintiff maintains that the Ditech Defendants were not
> the rightful owners/holders of his Note and mortgage and therefore violated the
> FDCPA by engaging in illegal debt collection, by which the Plaintiff has been
> damaged.  *See id.* ¶¶ 162-163.  Plaintiff seeks money damages from the Ditch
> Defendants.

> Count 5:  Violation of California Business and Professions Code, Section 17200,
> *et seq.* The Plaintiff asserts that California Business and Professions Code
> prohibits acts of unfair competition, and that the Ditech Defendants have violated
> the California Business and Professions Code and various sections of the
> California Penal Code by engaging in unfair, deceptive, and fraudulent conduct
> by, among other things, filing and recording false statements concerning the
> mortgage, and unlawfully collecting and enforcing on the mortgage against the
> Plaintiff and his Property. *See id.* ¶¶ 165-175.  The Plaintiff contends that he has
> been harmed by the Ditech Defendants' violations and seeks restitution for

himself and other California consumers, as well as an order directing the Ditech Defendants to remove the cloud on the title to his Property.  *Id.* ¶¶ 176-178.

Count 6:  Accounting of the exact amounts paid to the Ditech Defendants on account of the Note, which Plaintiff submits are owed to him because the Ditech Defendants never had authority to demand or accept the payments. He states that those payments exceed $75,000.00. *See id.* ¶¶ 181-182.

Count 7: Cancellation of "Instruments."[23] Plaintiff alleges that the following Instruments executed in connection with his Note and mortgage were all falsely executed and recorded, and that the Defendants were not the lawful holder of such interest: (i) "Deed of Trust" recorded as Document No. 2005-0159780; (ii) "Deed" a/k/a "Deed Upon Foreclosure" recorded as Document No. 2019-0014732; (iii) "Deed of Trust" recorded as Document No. 2019-30756; and (iv) "Trustee's Deed upon Sale" executed in favor of Breckenridge and recorded with the San Diego County Recorder's Office on January 15, 2019. The Plaintiff requests that the Defendants return these Instruments to the Plaintiff for cancellation.  *See id.* ¶¶ 185-191.

Count 8:  Quiet Title. Plaintiff seeks a determination from this Court that Breckenridge's claims in the property are void as of January 10, 2019, and Breckenridge has no interest in the Property because the foreclosure sale was fraudulent and not a true sale since the Ditech Defendants did not have any legal interests to convey the Property. *See id.* ¶¶ 194-198. Plaintiff asserts that the Ditech Defendants, through their agents are in violation of federal law because the interest in the Note and Deed of Trust belongs to the successor of the actual lender, which is not the Ditech Defendants. *See id.* ¶¶ 196-197. He seeks a determination that the Ditech Defendants had no rights or interest to convey to Breckenridge in the Trustee's sale in January 2019.

Count 9:  Set Aside Trustee's Sale. Plaintiff contends that the trustee's foreclosure was irregular and void *ab initio* because the mortgage and Note was never properly assigned to the Ditech Defendants, who therefore, had no authority to conduct the foreclosure sale. *See id.* ¶¶ 111-113.

**The Motion**

The Ditech Defendants contend that the Court should dismiss the Complaint with

prejudice. They assert that the Complaint is procedurally improper because claims for money

damages for prepetition conduct are properly brought through the claims resolution process, not

---

[23]    Plaintiff collectively refers to the Deed of Trust, the "Deed Upon Foreclosure" recorded as Document No. 2019-0014732, the "Deed of Trust" recorded as Document No. 2019-30756 and the Trustee's Deed upon Sale, as the "Instruments." The Court adopts this definition herein.

in an adversary proceeding. Motion ¶¶ 7-11. They maintain that since the Plaintiff has filed a $5

million proof of claim based on his "Litigation" claims and did so simultaneously with the

commencement of this adversary proceeding, he has effectively acknowledged that all the claims

at issue herein can be reduced to a monetary judgment and, as such, the Court should dismiss the

Complaint, in favor of the claims resolution process in these Chapter 11 Cases. They also

maintain that the Plaintiff cannot state claims for relief against them because the claims that

Plaintiff purports to assert in the Complaint are barred by application of the doctrines of *res*

*judicata* (*id.* ¶¶ 12-18) and judicial estoppel. *Id.* ¶¶ 19-22.  In his Opposition, the Plaintiff did not

address any of the Ditech Defendants arguments. Rather, through counsel, he asserted that

Plaintiff (i) has alleged an actual controversy among the parties sufficient to maintain a cause of

action for declaratory judgment (Opposition ¶ D); and (ii) has sufficiently alleged claims for

negligence and quasi-contract, a claim under California Business and Professions Code section

17200 and claim for cancellation of instruments. *Id.* ¶¶ E, F, H, I.  He also asserted that the

Ditech Defendants are "debt collectors' under the FDCPA. *Id.* ¶ G.[24] The Plaintiff also seeks

leave of the Court to amend the Complaint to include the trustee under the Deed of Trust as a

party herein. *Id.* at 3.

### Applicable Standards

A Rule 12(b)(6) motion is "designed to test the legal sufficiency of the complaint, and

thus, does not require the [c]ourt to examine the evidence at issue." *DeJesus v. Sears,*

*Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996) (citing *Carey v. Mt. Desert Island Hosp.*,

910 F. Supp. 7, 9 (D. Me. 1995)); *see also Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.

---

[24]    The Plaintiff also asserted that: (i) Plaintiff's cause of action has not been filed to interfere with a lawful nonjudicial foreclosure proceeding; (ii) Plaintiff is not contending that improper securitization of the Note relieved him of his payment obligations and does not contend that the Note or Deed of Trust is void; and (iii) Plaintiff has not asserted that possession of the Note is a prerequisite to foreclosure. Opposition ¶¶ A, B, C.

1998) (noting that under Rule 12(b)(6), the issue "is not whether a plaintiff is likely to prevail

ultimately, but whether the claimant is entitled to offer evidence to support the claims" (quoting

*Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir. 1996))). "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atl.

Corp. v. Twombly,* 550 U.S. 544, 570 (2007) ("*Twombly*"). A claim is facially plausible "when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In

resolving a Rule 12(b)(6) motion, a court must "accept all factual allegations in the complaint as

true," even if the allegations are doubtful in fact. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*

551 U.S. 308, 309 (2007); *see also Twombly,* 550 U.S. at 544.

Courts assess the sufficiency of the complaint in light of the pleading requirements in

Rule 8 of the Federal Rules of Civil Procedure ("Rule 8").[25] Rule 8(a)(2) provides that a

complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Under Rule 8's "liberal" notice pleading standards,

"the pleader need only set forth a short and plain statement of the claim showing that the pleader

is entitled to relief." *Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 176

(Bankr. S.D.N.Y. 2010) (citation omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading

system, which was adopted to focus litigation on the merits of a claim."). The "short and plain

statement" called for in Rule 8 must provide "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 547. In other words, the plaintiff must plead "factual

---

[25]    Rule 8 is made applicable herein by Bankruptcy Rule 7008.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

### Discussion[26]

The gravamen of the Complaint is that Green Tree had no authority to take any action in regard to the Note and Deed of Trust because it was not properly assigned any interest in those documents. On that basis, Plaintiff is seeking both monetary damages and equitable relief from the Ditech Defendants. The damage claims stem from Green Tree's alleged improper, unauthorized actions in purporting to enforce the Note and Deed of Trust. *See* Compl. ¶¶ 154-157 (Count 3), ¶¶ 160-163 (Count 4); *see also id*. ¶¶ 199-200, 204, 207-08. Read together, in his claims for equitable relief, Plaintiff is asking the Court to vacate the Foreclosure Sale, cancel the underlying Instruments, and return the Property to him, free and clear of any liens. *See id.* ¶¶ 134-148 (Count 1), ¶¶ 149-153 (Count 2), ¶¶ 164-178 (Count 5), ¶¶ 184-191 (Count 7), ¶¶ 192-198 (Count 8), ¶¶ 110-113 (Count 9); *see also id*. ¶¶ 201-03 and 205-06. He is also seeking an accounting of his payments to Green Tree under the Note. *See id.* ¶¶ 179-183 (Count 6).

The Ditech Defendants contend that the Court should dismiss the Complaint because it is procedurally improper under Bankruptcy Rule 7001. They assert that Bankruptcy Rule 7001 does not permit the filing of an adversary proceeding merely to recover a prepetition claim. Bankruptcy Rule 7001 lists ten separate categories of proceedings specifically denominated as adversary proceedings.  *See* Fed. R. Bankr. P. 7001; *see also Allied Dev. Of Ala. LLC v. Forever 21, Inc. (In re Forever 21, Inc.),* 623 B.R. 53, 60 (Bankr. D. Del. 2020) (Bankruptcy Rule 7001

---

[26]    The Property is located in San Diego, California, so California law governs the substantive law of this action. *See Blecher v. Cooperstein (In re Cooperstein),* 7 B.R. 618, 621 (Bankr. S.D.N.Y. 1980) (noting that "rights to property affixed to realty are governed by the law of the situs of the realty"); *United States v. Certain Parcels of Land,* 131 F. Supp. 65, 70 (S.D. Cal. 1955); ("[R]ealty is governed by the law of the place where situated-California.") (citation omitted); CAL. CIV. CODE § 755 (West 1872)("Real property within this State is governed by the law of this State, except where the title is in the United States.").

simply lists claims that must be prosecuted as adversary proceedings). A claim for damages

arising from prepetition conduct is not among those categories. *DBL Liquidating Trust v. P.T.*

*Tirtamas Majutama (In re Drexel Burnham Lambert Grp., Inc.),* 148 B.R. 993, 998

(S.D.N.Y.1992) ("A claim for damages arising from pre-petition conduct is not one of [the]

categories [enumerated in Bankruptcy Rule 7001]." *See also Dade Cty. Sch. Dist. v. Johns-*

*Manville Corp. (In re Johns–Manville Corp.*), 53 B.R. 346, 352 (Bankr. S.D.N.Y. 1985)

("Bankruptcy Rule 7001 . . . contains an exclusive list of matters which are classified as

adversary proceedings. The list does not include a category for the recovery of claims against the

debtor."); *Scott v. Aegis Mortg. Corp. (In re Aegis Mortg. Corp.)*, No. 07-11119 (BLS), 2008

WL 2150120, at *6 (Bankr. D. Del. May 22, 2008) (similar).  However, it includes a proceeding

"to obtain an injunction or other equitable relief." *See* Fed. R. Bankr. P. 7001(7). Thus, under

that rule, prepetition claims seeking equitable relief are expressly required to be brought by

adversary proceedings.

Many courts have found that prepetition claims for money damages are properly brought

through the claim resolution process in the administration of a bankruptcy case, not as adversary

proceedings. *See In re Residential Capital, LLC*, No. 12-12020 (MG), 2014 WL 3057111, at *6

(Bankr. S.D.N.Y. July 7, 2014) ("Damage claims should be asserted in a proof of claim."); *Conn.*

*v. Dewey & LeBouef LLP (In re Dewey & LeBoeuf LLP)*, 487 B.R. 169, 178 (Bankr. S.D.N.Y.

2013) (noting that prepetition claims for money damages must be asserted by proof of claim);

*Evergreen Solar, Inc. v. Barclays PLC (In re Lehman Bros. Holdings, Inc.*, No. 08-13555 JMP,

2011 WL 722582, at *8 (Bankr. S.D.N.Y. Feb. 22, 2011) (dismissing a claim for breach of

contract because the claim should have been asserted "in accordance with the claims allowance

process, and not by means of an adversary proceeding"); *In re Ephedra Prods. Liab. Litig.*, 329

B.R. 1, 7 (S.D.N.Y. 2005) ("In bankruptcy, the only appropriate way to assert a claim against a

debtor's estate is through the timely filing of a properly executed proof of claim and not through an adversary proceeding.") (internal quotation marks omitted); *Galitz v. Edghill (In re Edghill)*, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) ("Because the creditor's cause of action is predicated on a pre-petition contract claim, this Court finds that the creditor is precluded from recovering damages via this adversary proceeding."); *see also Prewitt v. N. Coast Vill., Ltd. (In re N. Coast Vill., Ltd.)*, 135 B.R. 641, 644 (B.A.P. 9th Cir. 1992) ("[A]n adversary proceeding against the debtor seeking to recover on a pre-petition dischargeable claim would not, under our holding today, violate the automatic stay. Such a proceeding could, however, be dismissed and sanctions could be awarded under Fed. R. Bankr. P. 9011 in an appropriate proceeding, because the claim should have been asserted through the claims allowance process.").

The Plaintiff's claims for equitable relief fall squarely within the scope of Rule 7001(7). Nonetheless, the Ditech Defendants maintain that the Court should dismiss the Complaint because there is no substance to those claims and the monetary damage claims, if any, must be resolved pursuant to the claims resolution process established in these Chapter 11 Cases. The Plaintiff concedes that as of the Petition Date, the Ditech Defendants did not hold title to, or any other Instrument granting them rights to the Property. *See* Compl. ¶ 81 ("Plaintiff was shocked to find his home foreclosed i[n] January 2019, [w]ith Breckenridge being the buyer . . ."). Plaintiff does not allege that the Ditech Defendants ever possessed any interest in the Property. *Id.* ¶ 87. The Ditech Defendants assert that it is impossible for them to return the Property to the Plaintiff, since they plainly cannot convey that which they do not possess. Motion ¶ 10. Moreover, they maintain that since they do not have title to the Property or hold any of the Instruments, they cannot cancel the Instruments. *Id.* They contend that on the face of the Complaint, most of the Plaintiffs equitable claims for relief asserted against them are moot *ab initio*. *Id.* (citing *E. Sys., Inc. v. W. 45th St. Indus. Condos. Inc. (In re E. Sys., Inc.)*, 1991 WL 90733, at *4 (S.D.N.Y. May

15

19-01137-jlg   Doc 27   Filed 10/29/21   Entered 10/29/21 10:04:55   Main Document
Pg 16 of 28

23, 1991) (noting that the "the actual disposition of property . . . may render moot an equitable claim as to the property" and collecting cases)).

The issue of whether this adversary proceeding is procedurally proper is largely academic. As explained below, although the Ditech Defendants misplace their reliance on application of the doctrine of judicial estoppel to bar the claims asserted in the Complaint, they correctly contend that application of the doctrine of *res judicata* bars the Plaintiff from obtaining the equitable and other relief that he is seeking herein. Thus, in assessing the merits of the Motion, the claims for equitable relief essentially are meaningless. What remains to be resolved in the Complaint, if anything, are damage claims that the Plaintiff has quantified at $5 million in his amended proof of claim. Those claims, if any, should be resolved in the claims resolution process in these Chapter 11 Cases, not by means of this adversary proceeding. *See In re Ephedra Prods. Liab. Litig.*, 329 B.R. at 7 (dismissing improperly filed adversary proceeding and holding that plaintiff's complaint, "when stripped of injunctive and declaratory demands that are meaningless . . . boils down to no more than a claim of money from the Debtors").

<u>Application of the Doctrine of Judicial Estoppel</u>

"[J]udicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1154 (9th Cir. 2015) (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)); *see also Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("*State Farm*") (stating that judicial estoppel is an "equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. . . . [The] court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the

16

dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'") The three factors that courts consider in applying the doctrine of judicial estoppel are: (1) whether a party's later position is "clearly inconsistent" with its earlier position; (2) whether the party persuaded a court to accept that party's earlier position such that judicial acceptance of an inconsistent position in another proceeding would create "the perception that either the first or the second court was misled"; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage on the opposing party if not estopped. *Id.* at 782-83. Application of the doctrine bars a litigant from asserting inconsistent positions in the same litigation and in different cases. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600-601 (9th Cir.1996).

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *State Farm*, 270 F.3d at 783.  That is what is at issue here. The Plaintiff did not disclose any of the claims he is asserting in the Complaint or any right to set-off against the Ditech Defendants either in his schedules, or at any time prior to the dismissal of his Chapter 13 Case. The causes of action in counts one through six in the Complaint arises from the Instruments and pre-date Plaintiff's commencement of his Chapter 13 Case. Compl. ¶¶ 86-97, 139-43. The remaining three counts relate to recission of the Instruments and the validity of the Foreclosure Sale which occurred several months after his Chapter 13 Case was dismissed. The Plaintiff admits that he filed the Chapter 13 Case to stop the foreclosure of the Property. *Id.* ¶ 79. The Ditech Defendants assert that by filing the Chapter 13 Case, the Plaintiff received the benefit of an automatic stay of the foreclosure action–without disclosing the claims, in his schedules, and that he has taken an inconsistent position in these Chapter 11 Cases by attempting to sue on

those same claims outside of his Chapter 13 Case.  Accordingly, the Ditech Defendants assert

that the Court should dismiss the Complaint, with prejudice.

When considering whether to apply judicial estoppel, courts inquire whether the party to

be estopped has succeeded in persuading a court to accept that party's earlier position, so that

"judicial acceptance of an inconsistent position in a later proceeding would create the perception

that either the first or the second court was misled. . . . Absent success in a prior proceeding, a

party's later inconsistent position introduces no risk of inconsistent court determinations, . . . and

thus poses little threat to judicial integrity." *Gottlieb v. Kest,* 141 Cal. App. 4th 110, 139, 46 Cal.

Rptr. 3d 7, 26 (2006) (internal citations and quotation marks omitted).  Application of judicial

estoppel is committed to the sound discretion of the court.  *See id.* at 132 ("Further, given that

'judicial estoppel is an equitable doctrine, . . . its application, even where all necessary elements

are present, is discretionary.'" (citing *MW Erectors, Inc. v. Niederhauser Ornamental & Metal*

*Works Co.,* 36 Cal. 4th 412, 422(2005)). *Accord Interstate Fire & Cas. Co., v. Underwriters at*

*Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), *as amended* (May 13, 1998) ("A majority

of courts apply judicial estoppel only if the court has relied on the party's previously inconsistent

statement, and we have recently adopted that rule." (citing *Masayesva v. Hale*, 118 F.3d 1371,

1382 (9th Cir. 1997)).

There is no dispute that in his Chapter 13 Case, the Plaintiff failed to disclose any claims,

including the claims asserted herein against the Ditech Defendants. However, the mere failure to

disclose those claims does not trigger judicial estoppel. There also must be judicial "acceptance"

or some form of reliance by the court on the alleged omission or inconsistent position/statement.

In the bankruptcy context, such acceptance may be evidenced in the form of a discharge granted

to the debtor, a confirmed plan, or some other judicial relief that was granted to the debtor in

reliance upon the purported inconsistency or omission.  *See, e.g.*, *State Farm*, 270 F.3d at 784

18

(stating "[w]e now hold that Hamilton is precluded from pursuing claims about which he had

knowledge, but did not disclose, during his bankruptcy proceedings, and that a discharge of debt

by a bankruptcy court, under these circumstances, is sufficient acceptance to provide a basis for

judicial estoppel, even if the discharge is later vacated. Our holding does not imply that the

bankruptcy court must actually discharge debts before the judicial acceptance prong may be

satisfied. The bankruptcy court may 'accept' the debtor's assertions by relying on the debtor's

nondisclosure of potential claims in many other ways."). The case of *Browning Manufacturing v.

Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207 (5th Cir. 1999) is instructive. There the

court found that there was judicial acceptance of the debtor's failure to disclose claims it had

against creditor where the bankruptcy court granted stay relief based upon the debtor's

disclosures in the bankruptcy schedules and parties' stipulation granting relief from the stay. The

Court explained that in the bankruptcy context, there is a further policy behind requiring accurate

and truthful disclosures of potential claims and assets:

> The basic principle of bankruptcy is to obtain a discharge from one's creditors in
> return for all one's assets, except those exempt, as a result of which creditors
> release their own claims and the bankrupt can start fresh. Assuming there is
> validity in [debtor's] present suit, it has a better plan. Conceal your claims; get rid
> of your creditors on the cheap, and start over with a bundle of rights. This is a
> palpable fraud that the court will not tolerate, even passively. [Debtor], having
> obtained judicial relief on the representation that no claims existed, cannot now
> resurrect them and obtain relief on the opposite basis.

*Id.* at 213 (citing *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.,* 989

F.2d 570, 571 (1st Cir. 1993), *cert. denied,* 510 U.S. 931 (1993)).

The Plaintiff did not confirm a plan in his Chapter 13 Case and did not receive a

bankruptcy discharge. The court dismissed the Chapter 13 Case in early 2018. The Ditech

Defendants have not demonstrated that the California bankruptcy court accepted or relied on the

information contained in Plaintiff's Schedule A/B for any purpose. Nor have they shown that

Plaintiff gained an advantage from the omission of his purported claims against the Ditech

Defendants in Schedule A/B. The Court declines to apply judicial estoppel to preclude Plaintiff

from asserting the claims in the Complaint. *See, e.g.*, *Sunnyside Dev. Co., LLC v. Bank of New*

*York*, No. 07 CIV. 8825 (LLS), 2008 WL 463722, at \*3 (S.D.N.Y. Feb. 19, 2008) (noting that

judicial estoppel is applied "rather narrowly" and "only when a tribunal in a prior separate

proceeding has relied on a party's inconsistent factual representations and rendered a favorable

decision[,]" and holding that judicial estoppel was not warranted because the prior court did not

rely on the plaintiff's mischaracterizations); *Gottlieb v. Kest*, 141 Cal.App.4th 110, 145, 147

(Cal. App. 2006) (stating that "judicial estoppel is an extraordinary remedy that should rarely

apply to positions taken in Chapter 11 cases absent evidence that the bankruptcy court adopted or

accepted the truth of the debtor's position[,]" and reversing the lower court's application of

judicial estoppel because the reliance requirement was not met).

<u>Application of the Doctrine of *Res Judicata*</u>

A purchaser of property at a trustee's sale may bring an unlawful detainer action under

section 1161a of the California Code of Civil Procedure to end any continuing occupancy of the

property believed to be unlawful.  As relevant, section 1161a states:

> In any of the following cases, a person who holds over and continues in
> possession of . . . real property after a three-day written notice to quit the property
> has been served upon the person . . .

> *       *       *       *

> (3) Where the property has been sold in accordance with Section 2924 of the Civil
> Code, under a power of sale contained in a deed of trust executed by such person,
> or a person under whom such person claims, and the title under the sale has been
> duly perfected.

CAL. CIV. PROC. CODE § 1161a(b)(3) (West 1991). Accordingly, a plaintiff pursuing a post

foreclosure action under section 1161a(b)(3) must "prove a sale in compliance with the statute

[CAL. CIV. CODE § 2924] and deed of trust, followed by purchase at such sale." *Cheney v.*

*Trauzettel*, 9 Cal. 2d 158, 158, 69 P.2d 832 (1937); *see also Old National Financial Services, Inc. v. Seibert,* 194 Cal.App.3d 460, 461 (1987) (same).

On January 23, 2019, Breckenridge commenced the Unlawful Detainer Action in the California Superior Court. *See* Complaint for Unlawful Detainer Action*.* In support of that action, Breckenridge asserted, among other things, that (i) on January 4, 2019, it became the owner of the Property by purchasing it at the Foreclosure Sale; (ii) title under that sale has been duly perfected; (iii) pursuant to the recitations contained within the Trustee's Deed Upon Sale, the Foreclosure Sale, and all required notices were accomplished in compliance with the California Civil Code;[27] and (iv) Plaintiff's title, if any, to the Property, that existed prior to the date of sale, was extinguished by the Foreclosure Sale.  *See* Complaint for Unlawful Detainer Action ¶¶ 4-6, 11. In his answer, the Plaintiff denied all the allegations in the complaint, and as affirmative defenses, asserted that "the trustee sale was defective and/or tainted with fraud and thus did not confer clear title to plaintiff." *See* Answer-Unlawful Detainer ¶¶ 2b, 3k.  The Plaintiff and Breckenridge subsequently entered into the Stipulated Judgment for possession of the Property on June 6, 2019, by which Plaintiff agreed to surrender possession of the Property to Breckenridge on July 8, 2019, and pay a monetary judgment in Breckenridge's favor.  *See* Stipulated Judgment at 2.

---

[27]     In part, the Trustee's Deed Upon Sale reads, as follows:

> This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor Trustee, or Substituted Trustee, under that certain Deed of Trust executed by **MICHAEL L. MCCHRISTIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** as Trustor, recorded 2/28/2005, as Instrument No. 2005-0159780, of official Records in the Office of the Recorded of **San Diego** County, California; and pursuant to the Notice of Default recorded **11/29/2016, as Instrument No. 2016-0651594**, of Official Records of said County, Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

*See* Trustee's Deed Upon Sale at 1-2.

A defendant may raise the affirmative defense of *res judicata* or claim preclusion by way of a motion to dismiss under Rule 12(b)(6). *See Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir.1984). The doctrine of *res judicata* "is a rule of fundamental and substantial justice, of public policy and of private peace, which should be cordially regarded and enforced by the courts." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (internal quotation marks omitted). A final judgment on the merits bars further claims by parties or their privies based on the same cause of action. The elements necessary to establish *res judicata* are: "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005). *See Mycogen Corp. v. Monsanto Co.*, 51 P.3d 297, 301 (Cal. 2002) (explaining that in California, *res judicata* or claim preclusion prevents relitigation after a final judgment on the merits of the same cause of action in a second suit between the same parties or parties in privity with them). *See also Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (federal courts must apply state law regarding *res judicata* to state court judgments).

A stipulated judgment for possession in an unlawful detainer action–like the Stipulated Judgment–constitutes a final judgement for purposes of *res judicata*. *See Malkoskie v. Option One Mortgage Corp.*, 115 Cal. Rptr. 3d 821 (Ct. App. 2010). In that case, the plaintiffs' home (the "Residence") was encumbered by a note and deed of trust that identified Home Loans USA, Inc. as the beneficiary and Premier Trust Deed Services as trustee. *Id.* at 823. There, the deed of trust contained a power of sale in favor of the beneficiary. *See id.* In May 2007, the plaintiffs defaulted on the loan, and on May 30, 2007, the trustee filed a notice of default on behalf of the beneficiary.  In February 2008, the trustee conducted a nonjudicial foreclosure sale of the Residence, and Wells Fargo Bank ("Wells Fargo") acquired it on a credit bid. *Id*. Wells Fargo recorded the purchase on April 18, 2008.  *See id.* at 824.  Thereafter, Wells Fargo instituted an

22

unlawful detainer action against the plaintiffs.  In their answer, the plaintiffs denied the material

allegations in the complaint, and raised two affirmative defenses, one alleging the foreclosure

sale was invalid due to improper notice and the other alleging unspecified "irregularities in the

sale." *Id.* At the time of trial in that action, the parties entered into a stipulated judgment in favor

of Wells Fargo.  In May of 2008, the plaintiffs were evicted from the Residence. *See id.*

Thereafter, the plaintiffs sued Wells Fargo and others, for, among other things, declaratory relief,

quiet title, cancellation of trustee's deed, willful wrongful foreclosure, negligent wrongful

foreclosure, and wrongful eviction.  *Id*.  The trial court sustained the defendants' demurrer

without leave to amend, and the plaintiffs appealed.  As relevant, on appeal the issue was

whether the stipulated judgment in the unlawful detainer action brought by Wells Fargo against

the plaintiffs barred the plaintiffs' claims.  *Id.*

        The court there held that the stipulated judgment barred the claims.  It reasoned that

"Wells Fargo expressly alleged in its complaint the specific facts it contended established it had

perfected legal title to the property, including that the foreclosure sale was conducted in

accordance with Civil Code section 2924[,]" and that by way of the affirmative defenses, "[t]he

conduct of the sale and the validity of the resulting transfer of title to Wells Fargo were therefore

directly in issue in the unlawful detainer case."  *Id.* at 826.  The court found that because the

complaint was brought under section 1161a, it was not only "proper for limited issues pertaining

to the validity of title obtained by Wells Fargo in the sale to be raised and conclusively

resolved[,]" but "because the sole basis upon which Wells Fargo asserted its right to possession

of the property was its 'duly perfected' legal title obtained in the nonjudicial foreclosure sale, the

validity of Wells Fargo's title *had* to be resolved in the unlawful detainer action."  *Id.*  It found

that the "[p]laintiffs' consent to judgment conclusively determined the specific factual

contentions embraced by the complaint, namely that Wells Fargo had obtained valid record title

23

pursuant to a nonjudicial foreclosure sale that had been duly conducted pursuant to statute." *Id.*

at 826 ("By stipulating to judgment against them, plaintiffs conceded the validity of Wells

Fargo's allegations that the sale had been duly conducted and operated to transfer 'duly

perfected' legal title to the property.") *Id.* at 827. The court held that "the unlawful detainer

judgment has claim preclusive effect in this action challenging the validity of Wells Fargo's

title." *Id.* (citing *Vella v. Hudgins*, 20 Cal.3d 251, 255, 572 P.2d 28 (1977)). Further, it held that

because all six claims against Wells Fargo were premised on the alleged invalidity of the

foreclosure sale, they were precluded as a matter of law. *Id.* at 828.

Unlawful detainer actions are summary proceedings, and parties are limited to litigating

issues that are directly pertinent to whether there is a right to possession of certain premises.

*Vella*, 20 Cal. 3d at 255 ("For our present purpose, it is sufficient to note that the [unlawful

detainer] proceeding is summary in character; that ordinarily, only claims bearing directly upon

the right of immediate possession are cognizable and that cross-complaints and affirmative

defenses, legal or equitable, are permissible only insofar as they would, if successful, 'preclude

the removal of the tenant from the premises.'") (citations omitted). They have limited *res

judicata* effect. *Pelletier v. Alameda Yacht Harbor*, 188 Cal. App. 3d 1551, 1552-153, 230 Cal.

Rptr. 253 (Ct. App. 1986) ("Because an unlawful detainer action is a summary procedure

involving only claims bearing directly upon the right of immediate possession, a judgment in

unlawful detainer has very limited *res judicata* effect. Legal and equitable claims-such as

questions of title and affirmative defenses-are not conclusively established unless they were fully

and fairly litigated in an adversary hearing."). Here, as in *Malkoskie*, title to the Property had to

be tried in the Unlawful Detainer Action and it was placed into issue by the Plaintiff's general

denial to the allegations in the Complaint for Unlawful Detainer Action, and specifically by

Plaintiff asserting the affirmative defenses that "the trustee sale was defective and/or tainted with

24

fraud and thus did not confer clear title to plaintiff." *See* Answer-Unlawful Detainer ¶ 3k.  In

entering into the Stipulated Judgment, the Plaintiff conceded not only that Breckenridge holds

proper, legal title to the Property, but that (i) on January 4, 2019, it became the owner of the

Property by purchasing it at the Foreclosure Sale; (ii) title under that sale has been duly

perfected; (iii) the Foreclosure Sale, and all required notices complied with section 2924 of the

California Civil Code; and (iv) Plaintiff's title, if any, to the Property, that existed prior to the

date of the Foreclosure Sale, was extinguished by the Foreclosure Sale. *See* Complaint for

Unlawful Detainer Action ¶¶ 4-7, 11; Stipulated Judgment at 2. Those findings preclude all of

the Plaintiff's claims which challenged Breckenridge's title to the Property, and any claim

premised on the alleged invalidity of the Foreclosure Sale and underlying Instruments.

Accordingly, they bar Plaintiff's claim for a declaratory judgment that the Ditech

Defendants have no interest in the Property or underlying Instruments, including the Note and

Deed of Trust (Count 1); and his claims to cancel the Instruments (Count 7), to quiet title (Count

8), and to set aside the Foreclosure Sale (Count 9). The Plaintiff's claims for quasi-contract

(Count 2), negligence (Count 3), violations of the FDCPA (Count 4), violations of the California

Business and Professional Code (Count 5), and for an accounting (Count 6) are rooted in his

contention that the Ditech Defendants are not proper assignees of the Instruments, including the

Note and Deed of Trust. *See* Compl. ¶¶ 111-113, 157. However, when Plaintiff stipulated that

"the [F]oreclosure [S]ale and all required notices were accomplished in compliance with [state

law]," and that "title under the sale had been duly perfected," he agreed that the validity of the

Deed of Trust, the Trustee's Deed of Sale and the other underlying Instruments to the

Foreclosure Sale was no longer in issue. The Stipulated Judgment also resolved, in

Breckenridge's favor, that the foreclosing party had the right to foreclose. Plaintiff is therefore

barred from raising those claims in the Complaint. *See, e.g.*, *Foulkrod v. Wells Fargo Financial*

25

*California, Inc.*, No. CV 11–732–GHK (AJWx), 2012 WL 13008150, at *6 (C.D. Cal. Nov. 28, 2012) (applying *Malkoskie* to preclude, under collateral estoppel, plaintiff's claims predicated on lender's use of forged signatures because such allegation went to the bank's authority to conduct the foreclosure sale and convey title, which had been fully determined through the plaintiffs to vacate unlawful detainer stipulation). Similarly, here Plaintiff's claims also are barred by application of the doctrine of *res judicata.*

<u>Whether to Grant Plaintiff Leave to Replead</u>

Rule 15 of the Federal Rules of Civil Procedure[28] provides that, except in circumstances not relevant here, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)); *see also Anthony v. City of New York,* 339 F.3d 129, 138 n.5 (2d Cir.2003) ("We have interpreted [Rule 15] in favor of allowing. . . amendment absent a showing by the non-moving party of bad faith or undue prejudice."). In this circuit, courts deny requests for leave to amend when the amendment would be futile. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting that "futility" is "grounds on which denial of leave to amend has long been held proper" and that "leave may be denied where amendment would be futile"); *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) ("It is well established that leave to amend need not be granted where the proposed amendment would be futile.") (internal

---

[28]    Rule 15 is made applicable herein by Bankruptcy Rule 7015.

quotation marks omitted and citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc*., 106

F.3d 11, 18 (2d Cir.1997).

Plaintiff maintains that he should be granted leave to amend the Complaint because of

alleged "admissions contained in the Defendant's pleadings regarding the nature of the purported

relationships by and between the parties, and the identification of a necessary party to the

proceedings by the Defendant." Opposition at 3. He "respectfully requests leave to amend the

complaint to conform to the Defendant's admissions." *Id*. Plaintiff further alleges that

"[s]pecifically, the Defendant, Ditech admitted that it is NOT the holder or beneficiary of

Plaintiff's Note and Deed of Trust, and that it is acting exclusively as the purported 'Loan

Servicer,' and not as a Lender. Defendant Ditech has also admitted that it asserts that there is a

trustee for the trust that purports to hold Plaintiff's Note and Deed of Trust. Accordingly, that

trustee is a further necessary party to these proceedings." *Id.* However, no amendment by

Plaintiff can cure the fatal deficiencies in this adversary proceeding–that the claims asserted are

barred by the doctrine of *res judicata*. Plaintiff was afforded a full and fair opportunity to assert

his claims in the Unlawful Detainer Action, which he did, and when he voluntarily entered into

the Stipulated Judgment in favor of Breckenridge, he agreed that his claims in the Unlawful

Detainer Action were without merit. In entering the Stipulated Judgment, Plaintiff validated the

Instruments and procedures leading up to, and including, the Foreclosure Sale, which he now

disputes.

Plaintiff suggests that he may cure the fatal deficiency—*res judicata*—by joining the

trustee for the trust that purports to hold his Note and Deed of Trust. However, joining a party

cannot cure the defect. *Wittich v. Wittich*, No. 06CV1635(JFB)(WDW), 2006 WL 3437407, at *7

(E.D.N.Y. Nov. 29, 2006) (finding that there are no allegations that could cure the complaint's

infirmities under *res judicata,* denying plaintiff's request to join an indispensable part*y* and

27

denying plaintiff leave to replead as it would be futile). The Court denies the Plaintiff's request

for leave to amend the Complaint.

## **Conclusion**

Based on the foregoing, the Court dismisses the Complaint against the Ditech

Defendants, with prejudice.

IT IS SO ORDERED.

Dated: New York, New York
October 28, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge