**UNITED STATES BANKRUPTCY COURT**                    NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------- x
In re:                                          :
                                                :    Case No. 19-10412 (JLG)
                                                :    Chapter 11
Ditech Holding Corporation, et al.,             :
                                                :
                                                :    (Jointly Administered)
                              Debtors.¹         :
-------------------------------------------------- x
-------------------------------------------------- x
Michael McChristian,                            :
             Plaintiff,                         :
                                                :
v.                                              :
                                                :    Adversary Case No. 19-01137 (JLG)
                                                :
Ditech Holding Corporation, Green Tree          :
Credit LLC, and Breckenridge Prop Fund          :
2016 LLC,                                       :
             Defendants.                        :
-------------------------------------------------- x
```

### MEMORANDUM DECISION AND ORDER GRANTING BRECKENRIDGE'S MOTIONS TO DISMISS THE COMPLAINT AND EXPUNGE THE LIS PENDENS

**A P P E A R A N C E S :**

WEDGEWOOD
*Attorneys for Breckenridge Property
Fund 2016, LLC*
2015 Manhattan Beach Blvd, Suite 100
Redondo Beach, CA 90278
By:    Seth P. Cox, Esq.

Joseph C. La Costa, Attorney at Law
*Attorneys for Michael McChristian*
7860 Mission Center Court, Suite 103
San Diego, CA 92108
By:    Joseph C. La Costa, Esq.

---

¹    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are Ditech Holding Corporation (0486); DF Insurance Agency LLC (6918); Ditech Financial LLC (5868); Green Tree Credit LLC (5864); Green Tree Credit Solutions LLC (1565); Green Tree Insurance Agency of Nevada, Inc. (7331); Green Tree Investment Holdings III LLC (1008); Green Tree Servicing Corp. (3552); Marix Servicing LLC (6101); Mortgage Asset Systems, LLC (8148); REO Management Solutions, LLC (7787); Reverse Mortgage Solutions, Inc. (2274); Walter Management Holding Company LLC (9818); and Walter Reverse Acquisition LLC (8837).

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## Introduction[2]

In this adversary proceeding, Michael McChristian (the "Plaintiff") is suing Green Tree

Credit LLC ("Green Tree"),[3] Ditech Holding Corporation Mortgage, LLC ("Ditech," with Green

Tree, the "Ditech Defendants") and Breckenridge Property Fund 2016, LLC ("Breckenridge"

and together with the Ditech Defendants, the "Defendants") to unwind the nonjudicial

Foreclosure Sale of the premises located at 11118 Ironwood Road, San Diego, California (the

"Property"). The Ditech Defendants are debtors in these Chapter 11 Cases. Green Tree is the

assignee of the Deed of Trust to the Property that secured payment of the $326,000.00 loan that

the Plaintiff obtained to purchase the Property. Ditech is Green Tree's parent company.

Breckenridge is not a debtor; it purchased the Property at the Foreclosure Sale.

In May 2019, the Plaintiff commenced this adversary proceeding. In June 2019, he

recorded a Notice of Pendency of Action (the "Lis Pendens") against the Property. The

Complaint contains nine causes of action, each of which names Ditech and/or Green Tree as

defendants. The Ditech Defendants jointly filed their own Rule 12(b)(6) motion to dismiss the

---

[2]    Capitalized terms used but not otherwise defined in the Introduction shall have the meanings ascribed to them herein.  References herein to "[ECF No. ____]" are to documents filed in the electronic docket in these jointly administered cases, *In re Ditech*, Case No. 19-10412 (the "Chapter 11 Cases").  References herein to "[AP ECF No. ____]" are to documents filed in the electronic docket in this adversary proceeding, *Michael McChristian v. Ditech Holding Corporation, et. al,* Adversary Case No. 19-01137.

[3]    Green Tree Credit LLC is named as a defendant in the Complaint, but the Corporate Assignment of Deed of Trust, annexed as Exhibit 3 to Breckenridge's Request for Judicial Notice names Green Tree Servicing LLC as the assignee of the Deed of Trust. The Court understands that the Plaintiff is suing Green Tree Servicing LLC.

Complaint.[4] On October 29, 2021, the Court granted the motion and dismissed the Ditech Defendants from the Complaint with prejudice.[5]

In the four counts that also name Breckenridge as a defendant (the "Breckenridge Claims"), the Plaintiff seeks equitable relief that, if granted, would result in setting aside the Foreclosure Sale and restoring Plaintiff with title to the Property. The matters before the Court are (i) Breckenridge's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)")[6] to dismiss the Breckenridge Claims, with prejudice (the "Motion" or "Rule 12(b)(6) Motion"),[7] and (ii) Breckenridge's motion to expunge the Lis Pendens (the "Motion to Expunge").[8] As support for the Rule 12(b)(6) Motion, Breckenridge says the Court lacks subject matter jurisdiction over the Breckenridge Claims because they do not fall within the Court's core jurisdiction. It also argues that the Court should dismiss each of those claims because the Plaintiff has not and cannot state claims for relief thereunder, and in any event, because those claims are barred by application of the doctrines of collateral and judicial estoppel, and because it is a bona fide purchaser of the Property that took title to the Property free and clear of any competing interests. Breckenridge asserts that the Court should grant the Motion to Expunge and expunge the Lis Pendens because the Plaintiff cannot establish the validity of any "real property

---

[4]    *Debtors' Motion to Dismiss Plaintiff's Adversary Complaint* [AP ECF No. 12] (the "Ditech Dismissal Motion").

[5]    *See Memorandum Decision and Order Granting Debtors' Motion to Dismiss Plaintiff's Adversary Complaint* [AP ECF No. 27] (the "Ditech Memo and Order").

[6]    Rule 12(b)(6) is made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

[7]    *See Defendant's Notice of Motion and Motion to Dismiss Plaintiff's Adversary Complaint; Memorandum of Points and Authorities in Support* [AP ECF No. 8]. *See also Defendant's Request for Judicial Notice In Support of Motion To Dismiss Plaintiff's Adversary Complaint* [AP ECF No. 8-1] (the "Request for Judicial Notice").

[8]    *See Defendant's Notice of Motion and Motion to Expunge Lis Pendens; Memorandum of Points and Authorities in Support* [AP ECF No. 6]. *See also Defendant's Request for Judicial Notice in Support of Motion to Expunge Lis Pendens* [AP ECF No. 6-2] ("Request for Judicial Notice – Motion to Expunge").

claim" asserted against Breckenridge. It also asserts that the Court should award it its fees and

costs incurred in bringing the Motion to Expunge. The Plaintiff filed a single response to both

motions (the "Opposition").[9]  In the Opposition, the Plaintiff failed to address the Motion to

Expunge and most of the arguments made by Breckenridge in support of the Rule 12(b)(6)

Motion.

For the reasons set forth herein, the Court (i) grants the Rule 12(b)(6) Motion and

dismisses the Breckenridge Claims with prejudice and (ii) grants the Motion to Expunge and

expunges the Lis Pendens. The Court awards Breckenridge $900.00 for its fees and costs

incurred in prosecuting the Motion to Expunge.

### Background[10]

In 2005, the Plaintiff purchased the Property from Homecomings Financial Network Inc.

("Homecomings"). On February 18, 2005, Plaintiff executed a promissory note (the "Note") in

---

[9]    *See* 1) *Plaintiff's Opposition to Defendant Breckenridge* [sic] *Motion to Dismiss the Complaint; 2) Plaintiff's Opposition to Defendant Breckenridge* [sic] *Motion to Remove Lis Pendens; 3) Plaintiff's Motion for Permission to File an Amended Complaint* [AP ECF No. 18].

[10]    The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. Accordingly, the facts recited herein are those alleged in the Complaint, which the Court presumes to be true in resolving this Motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("In any event, a ruling on a motion for dismissal pursuant to Rule 12(b)(6) is not an occasion for the court to make findings of fact."). In support of the Motion, Breckenridge asks the Court to take judicial notice of certain documents filed of record in California state court and the United States Bankruptcy Court for the Southern District of California. *See* Request for Judicial Notice Exs. 1-11.  It is well settled that in resolving a Rule 12(b)(6) motion, the court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir.1979). The documents cited by Breckenridge in support of the Request for Judicial Notice directly bear on the merits of the claims at issue in the Complaint. Moreover, the Plaintiff directly or indirectly relies on most of them in support of the Complaint. Thus, subject to the standards applicable to Rule 12(b)(6) motions, the Court takes judicial notice of those documents. *See, e.g., Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006) (stating that on a motion to dismiss for failure to state a claim a court may consider materials extrinsic to the pleadings, if the materials are integral to the complaint or matters subject to judicial notice); *Kasey v. Molybdenum Corp. of America*, 336 F.2d 560, 563 (9th Cir. 1964) (where parties had history of litigation in state court, court took "judicial notice of. . . officially reported decisions and refers to them for a better understanding of the complicated factual situation here existing."); *Wingate v. Gives*, 05 Civ. 1872 (LAK), 2016 WL 519634, at *1 (S.D.N.Y. Feb. 5, 2016) (court took judicial notice of facts in reported state court decisions).

the amount of $326,000.00 to finance the purchase of the Property. As security for the Note, the Plaintiff executed a deed of trust (the "Deed of Trust") which was recorded with the County of San Diego on February 28, 2005. *See* Deed of Trust.[11] The Deed of Trust identified Homecomings as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for the lender and beneficiary of the Deed of Trust. *See id.* at 2. Pursuant to an assignment recorded on September 17, 2010, MERS assigned its beneficial interest in the Deed of Trust to GMAC Mortgage, LLC ("GMAC"). *See* Assignment of Deed of Trust.[12] In turn, on February 16, 2015, GMAC assigned the Deed of Trust to Green Tree. *See* Corporate Assignment of Deed of Trust.[13]

The Plaintiff contends that beginning in December 2013 and continuing to December 2014, he received notices of past due payments and notices of default from Green Tree which were erroneous. *See* Compl. ¶¶ 38-59.  He asserts that beginning in January 2015 and into 2017, he received notices that his loan was in default and the Property was going into foreclosure. *See id.* ¶¶ 60-73. *See also* Notice of Default recorded November 29, 2016.[14] The Plaintiff does not deny that he was in arrears under the Note but disputes the amount claimed due and owing under the notices. *See* Compl. ¶ 75. By Notice of Trustee's Sale dated November 9, 2017, a foreclosure sale of the Property was scheduled for January 5, 2018. *See* Notice of Trustee's Sale;[15] *see also* Compl. ¶ 66 (Plaintiff acknowledges, that "[o]n November 29, 2016, Plaintiff received 3

---

[11]   A copy of the Deed of Trust is annexed as Exhibit 1 to the Request for Judicial Notice.

[12]   A copy of the Assignment of Deed of Trust is annexed as Exhibit 2 to the Request for Judicial Notice.

[13]   A copy of the Corporate Assignment of Deed of Trust is annexed as Exhibit 3 to the Request for Judicial Notice.

[14]   A copy of the Notice of Default is annexed as Exhibit 4 to the Request for Judicial Notice.

[15]   A copy of the Notice of Trustee's Sale is annexed as Exhibit 5 to the Request for Judicial Notice.

[Notices of Default] with a sale date[.]"), *id.* ¶ 74 (noting the foreclosure sale was scheduled for

January 1, 2018). On April 26, 2018, to avoid foreclosure of the Property, the Plaintiff

commenced a case under chapter 13 of the Bankruptcy Code in the United States Bankruptcy

Court for the Southern District of California (the "Chapter 13 Case"). *See* Compl. ¶ 79. *See also*

Plaintiff's Voluntary Chapter 13 Petition.[16] In support of the petition, the Plaintiff filed Schedule

A/B.  In that schedule, the Plaintiff was asked to "Describe Your Financial Assets," and, in

particular to state whether he "own[ed] or [had] any legal or equitable interest" in (i) "[c]laims

against third parties, whether or not you have filed a lawsuit or made a demand for payment;" or

(ii) "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the

debtor or any rights to setoff claims." *See* Schedule A/B, Part 4 ¶¶ 33, 34. The Plaintiff

responded "No" to both questions; he did not disclose any of the claims he is asserting in the

Complaint or any right to set-off against the Defendants. *See id.*  On December 4, 2018, the

bankruptcy court dismissed the Chapter 13 Case without prejudice.  *See* Compl. ¶ 80; *see also*

Notice of Entry of Order Dismissing Case.[17]

After the bankruptcy court dismissed the case, Clear Recon Corp., as trustee under the

Deed of Trust, sold the Property at a nonjudicial foreclosure sale (the "Foreclosure Sale") to

Breckenridge for the sum of $593,500.00. On January 15, 2019, the trustee recorded a Trustee's

Deed Upon Sale to Breckenridge. *See* Trustee's Deed Upon Sale.[18] On January 23, 2019,

Breckenridge commenced an unlawful detainer eviction action in the Superior Court for the State

of California – San Diego County (the "California Superior Court") against the Plaintiff for

---

[16]    A copy of the Voluntary Chapter 13 Petition is annexed as Exhibit 6 to the Request for Judicial Notice.

[17]    A copy of the Notice of Entry of Order Dismissing Case is annexed as Exhibit 7 to the Request for Judicial Notice.

[18]    A copy of the Trustee's Deed Upon Sale is annexed as Exhibit 8 to the Request for Judicial Notice.

damages and to obtain possession of the Property (the "Unlawful Detainer Action"). *See* Complaint for Unlawful Detainer Action.[19]  In his answer filed in the Unlawful Detainer Action, the Plaintiff raised affirmative defenses, including that the trustee's sale was invalid and did not convey clear title to the Property to Breckenridge. *See* Answer - Unlawful Detainer Action ¶ 3k.[20] The Plaintiff and Breckenridge subsequently entered into a Stipulated Agreement for Judgment or Dismissal in that action (the "Stipulated Judgment").[21] Pursuant to the Stipulated Judgment, Plaintiff agreed to surrender possession of the Property to Breckenridge on July 8, 2019 and to pay Breckenridge a monetary judgment of $23,019.56. Stipulated Judgment at 1-2. The Stipulated Judgment conclusively resolved the complaint filed in the Unlawful Detainer Action in favor of Breckenridge.

**The Chapter 11 Cases**

On February 11, 2019 (the "Petition Date"), Ditech Holding Corporation (f/k/a Walter Investment Management Corp.) and certain of its affiliates ("Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code in this Court. Thereafter, the Debtors remained in possession and control of their business and assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 26, 2019, the Debtors confirmed their Third Amended Plan, and on September 30, 2019, that plan became effective.[22]

---

[19]    A copy of the Complaint for Unlawful Detainer Action is annexed as Exhibit 9 to the Request for Judicial Notice.

[20]    A copy of the Answer - Unlawful Detainer Action is annexed as Exhibit 10 to the Request for Judicial Notice.

[21]    A copy of the Stipulated Judgment is annexed as Exhibit 11 to the Request for Judicial Notice.

[22]    *See Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1326]; *Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors* [ECF No. 1404]; *Notice of (I) Entry of Order Confirming Third Amended Joint Chapter 11 Plan of Ditech Holding Corporation and its Affiliated Debtors, (II) Occurrence of Effective Date, and (III) Final Deadline for Filing Administrative Expense Claims* [ECF No. 1449].

**The Adversary Proceeding**

On May 15, 2019, the Plaintiff commenced this adversary proceeding by filing the

Complaint.[23] On June 4, 2019, the Plaintiff recorded the Lis Pendens against the Property, but

did not serve a copy on Breckenridge. *See* Motion to Expunge at 3. *See also* Lis Pendens.[24]  In

substance, in the Complaint, the Plaintiff challenges the validity of the Foreclosure Sale. Plaintiff

says that the sale was not authorized because the assignments of the beneficial interests in the

Note and Deed of Trust to Green Tree were defective. He also asserts, for the same reason, that

the Ditech Defendants improperly collected monthly payments from him on account of the Note.

The Complaint contains nine causes of action. Two of the counts seek monetary damages solely

against the Ditech Defendants; the remaining counts seek different forms of equitable relief

against Breckenridge and/or the Ditech Defendants. The four Breckenridge Claims consist of:

> Count 1:  Declaratory Relief to determine the status of Defendants' Claims
> (pursuant to 28 U.S.C. §§ 2201, 2202) - seeking a declaration that the Defendants
> "have no right or interest in Plaintiff's Note, Deed of Trust, or the Property, which
> authorizes them, in fact or as a matter of law, to any benefit or right set forth in
> the Note and Deed of Trust, and consequently the 'sale' to Breckenridge is and
> was void an [sic] without any force or effect" and a determination of whether
> Ditech and Breckenridge's claims are enforceable.  *See* Compl. ¶¶ 145, 147.  The
> plaintiff also seeks punitive damages in an amount to be determined at trial.  *Id.* ¶
> 148.

> Count 7: Cancellation of "Instruments."[25] Plaintiff alleges that the following
> Instruments executed in connection with his Note and mortgage were falsely
> executed and recorded, and that the Defendants were not the lawful holders of
> such Instruments: (i) "Deed of Trust" recorded as Document No. 2005-0159780;
> (ii) "Deed" a/k/a "Deed Upon Foreclosure" recorded as Document No. 2019-

---

[23]    *See Verified Complaint for: 1. Declaratory Relief [28 U.S.C. §§ 2201, 2202] 2. Quasi Contract 3. Negligence 4. Violation of 15 U.S.C. §1692, et seq. 5. Violation of California Business and Professions Code Section 17200, et seq. 6. Accounting 7. Cancellation of Instruments 8. Set Aside Trustee's Sale* [AP ECF No. 1] (the "Complaint" or "Compl.").

[24]    A copy of the Lis Pendens is annexed as Exhibit 12 to the Request for Judicial Notice – Motion to Expunge.

[25]    Plaintiff collectively refers to the Deed of Trust, the "Deed Upon Foreclosure" recorded as Document No. 2019-0014732, the "Deed of Trust" recorded as Document No. 2019-30756 and the Trustee's Deed upon Sale, as the "Instruments." The Court adopts this definition herein.

0014732; (iii) "Deed of Trust" recorded as Document No. 2019-30756; and (iv) "Trustee's Deed upon Sale" executed in favor of Breckenridge and recorded with the San Diego County Recorder's Office on January 15, 2019. The Plaintiff requests that the Defendants return these Instruments to the Plaintiff for cancellation.  *See id.* ¶¶ 185-191.

Count 8:  Quiet Title. Plaintiff seeks a determination from this Court that Breckenridge's claims in the property are void as of January 10, 2019, and Breckenridge has no interest in the Property because the foreclosure sale was fraudulent and not a true sale since the Ditech Defendants did not have any legal interests to convey the Property. *See id.* ¶¶ 194-198. Plaintiff asserts that the Ditech Defendants, through their agents are in violation of federal law because the interest in the Note and Deed of Trust belongs to the successor of the actual lender, which is not the Ditech Defendants. *See id.* ¶¶ 196-197. He seeks a determination that the Ditech Defendants had no rights or interest to convey to Breckenridge in the Foreclosure Sale in January 2019.

Count 9:  Set Aside Trustee's Sale. Plaintiff contends that the trustee's foreclosure was irregular and void *ab initio* because the Note was never properly assigned to the Ditech Defendants, who therefore, had no authority to conduct the foreclosure sale. *See id.* ¶¶ 111-113 [sic].

## The Motions

In the Motion, Breckenridge contends that the Court should dismiss the Breckenridge Claims with prejudice. It asserts that the Court lacks subject matter jurisdiction over the claims. *See* Motion ¶¶ A1-A2. It also contends that those claims fail as a matter of law (*id.* ¶¶ B1-B4), and in any event, that they are barred by application of the doctrines of collateral estoppel (*id.* ¶ A3), and judicial estoppel (*id.* ¶ A4), and because Breckenridge is a bona fide purchaser of the Property. *Id.* ¶ A5.  Under California law, a party to an action who asserts a valid "real property claim" may file a lis pendens. Breckenridge asserts that the Court should grant the Motion to Expunge because the Plaintiff does not hold a "real property claim."  *See generally* Motion to Expunge.

In his Opposition, the Plaintiff does not address the Motion to Expunge, at all, or any of Breckenridge's arguments in support of the Rule 12(b)(6) Motion. Rather, through counsel,

Plaintiff asserts that he has alleged an actual controversy with Breckenridge sufficient to maintain a cause of action for declaratory judgment. Opposition ¶ D. He also argues that he has sufficiently alleged claims for negligence and quasi-contract, a claim under California Business and Professions Code §17200 and a claim for cancellation of Instruments. *Id.* ¶¶ E, F, H, J. However, he asserts only the last of those claims against Breckenridge. He also contends that the Ditech Defendants are "debt collectors' under the Fair Debt Collection Practices Act. *Id.* ¶ G. That too is irrelevant to Breckenridge. The Plaintiff also asserts that: (i) his cause of action has not been filed to interfere with a lawful nonjudicial foreclosure proceeding; (ii) he is not contending that improper securitization of the Note relieved him of his payment obligations and does not contend that the Note or Deed of Trust is void; and (iii) he has not asserted that possession of the Note is a prerequisite to foreclose on the Property. *Id.* ¶¶ A, B, C. Finally, he seeks leave of the Court to amend the Complaint to include the trustee under the Deed of Trust as a party herein. *Id.* at 2.

## Jurisdiction

In the Complaint, the Plaintiff asserts that the Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202, 12 U.S.C. § 2605, 15 U.S.C. § 1692, and 42 U.S.C. § 1983. *See* Compl. ¶ 4. He also asserts that the Court has supplemental jurisdiction over the pendant state law claims under 28 U.S.C. § 1367, and that this is a core proceeding. *Id.* ¶¶ 5, 6. In support of the Motion, Breckenridge contends that the Court should dismiss the Breckenridge Claims with prejudice for lack of subject matter jurisdiction because they fall outside the Court's core jurisdiction. Motion ¶¶ A1-A2.

Section 1334 of title 28 of the United States Code vests the district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or

related to cases under title 11." 28 U.S.C. § 1334(b). Pursuant to 28 U.S.C. § 157, the district

courts may "refer" any or all of these proceedings "to the bankruptcy judges for the district." The

United States District Court for the Southern District of New York has done so. *See Amended*

*Standing Order of Reference* dated January 31, 2012 (Preska, C.J.). Once a proceeding has been

referred to the bankruptcy court, "[t]he manner in which a bankruptcy judge may act. . . depends

on the type of proceeding involved." *Stern v. Marshall,* 564 U.S. 462, 473 (2011). In that regard,

and "[t]o satisfy constitutional limitations on the subject matter jurisdiction of the Article I

bankruptcy courts, bankruptcy jurisdiction is divided into 'core' and 'non-core' jurisdiction." *In*

*re Fairfield Sentry*, 458 B.R. 665, 674 (S.D.N.Y. 2011).

Bankruptcy core jurisdiction extends to all civil proceedings arising under title 11 or

arising in a case under title 11. *See* 28 U.S.C. § 157(b)(1); *see also Wood v. Wood (In re Wood*),

825 F.2d 90, 96 (5th Cir.1987) ("[S]ection 157 apparently equates core proceedings with the

categories of 'arising under' and 'arising in' proceedings."). A core proceeding, as a general

matter, is one that invokes a substantive right under the Bankruptcy Code or that could arise only

in the context of a bankruptcy case. *Binder v. Price Waterhouse Co., LLP (In re Resorts Int'l,*

*Inc.*), 372 F.3d 154, 162-63 (3d Cir. 2004); *Wood,* 825 F.2d at 96-97. The Court previously

determined that it has core jurisdiction over the claims for relief asserted in the Complaint

against the Ditech Defendants. *See* Ditech Memo and Order at 4. Those claims plainly "arise in"

the Chapter 11 Cases as they fall within the claim allowance process under 28 U.S.C. §

157(b)(2)(B). In contrast, the Plaintiff's claims against Breckenridge neither "arise under" title

11, nor "arise in" the Chapter 11 Cases. They are based on Breckenridge's prepetition conduct

with the Plaintiff and arise under California state law. Accordingly, the claims fall outside the

scope of the Court's core jurisdiction. *See Joremi Ener., Inc. v. Hershkowitz (In re New 118th*

*LLC)*, 396 B.R. 885, 890 (Bankr. S.D.N.Y. 2008) (finding that "garden-variety state law claim[s]

between non-debtor parties" are non-core); *Scott v. Am. Sec. Ins. Co. (In re Scott),* 572 B.R. 492,

521 (Bankr. S.D.N.Y. 2017) (holding that state-law crossclaims between non-debtors do not fall

within bankruptcy court's core jurisdiction). *See also Lead I JV, LP v. North Fork Bank*, 401

B.R. 571, 581-82 (Bankr. E.D.N.Y. 2009) (finding purely state law claims between non-debtors

sounding in tort and contract law at best are related to non-core matters, not core matters). The

fact that, as described below, the Plaintiff filed a proof of claim based on "Litigation" in these

cases does not alter that conclusion. *See In re Holiday RV Superstores, Inc.,* 362 B.R. 126, 129

(D. Del. 2007) (finding the fact that plaintiffs "may have a claim against someone other than the

estate for the same claim . . . [did] not transform a non-core proceeding into a core

proceeding.").

      Non-core proceedings are those that are not core "but that [are] otherwise related to a

case under title 11." *See* 28 U.S.C. § 157(c)(1). *See also Stern v. Marshall*, 564 U.S. at 477 ("The

terms 'non-core' and 'related' are synonymous.") (citation omitted).  A dispute between third

parties is "related to" a bankruptcy if "its outcome might have any conceivable effect on the

bankruptcy estate." *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co., Inc.),* 676

F.3d 45, 53 (2d Cir. 2012) (footnote omitted) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d

110, 114 (2d Cir. 1992)). *Accord Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572,

579 (2d Cir. 2011) ("[A] civil proceeding is related to a title 11 case if the action's outcome

might have any conceivable effect on the bankrupt estate." (internal quotation marks omitted)).

The resolution of the Breckenridge Claims will have no effect on the administration of these

Chapter 11 Cases. As of the Petition Date, the Debtors had no interest in the Property, and did

not hold the Note or the Deed of Trust. *See* Ditech Dismissal Motion ¶ 10 ("At the

commencement of these bankruptcy proceedings, the Ditech Defendants, by the Plaintiff's own

pleadings, did not hold title or any other instrument over the Property, nor are they alleged to

hold title now."). In those claims, the Plaintiff seeks a determination of Breckenridge's rights to

and interest in the Property, and cancellation of the underlying title and security documents.

Resolution of those claims will not impact the Debtors' estates or the administration of the

Chapter 11 Cases, because the Property is not property of the Debtors' estates, and the Ditech

Defendants have no interest in the Instruments. Those claims are not related to the Debtors'

Chapter 11 Cases. *See, e.g., Baker Dev. Corp. v. Mulder (In re Mulder)*, 307 B.R. 637, 645-646

(Bankr. N.D. Ill. 2004) (explaining that "[a] dispute between third parties is related to a

bankruptcy only if 'the dispute affects the amount of property for distribution [i.e., the debtor's

estate] or the allocation of property among creditors[,]'" and finding that non-debtor plaintiff's

claims against non-debtor defendant for damages, reformation, quiet title, and specific

performance were not claims related to the debtor's case because there would be no impact to the

administration of the debtor's estate or distribution to the debtor's creditors) (citation omitted).

Section 1367(a) of title 28 of the United States Code, states, in part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). The Second Circuit has held that a bankruptcy court may exercise

supplemental jurisdiction under section 1367. *Lionel Corp. v. Civale & Trovato, Inc. (In re*

*Lionel Corp.*), 29 F.3d 88, 92 (2d Cir. 1994). "This section allows a district court that has

original jurisdiction over some claims in an action to exercise supplemental jurisdiction over

additional claims that are part of the same case or controversy." *In re Enron Corp.,* 353 B.R. 51,

55 (Bankr. S.D.N.Y. 2006) (citation omitted). Claims are "part of the same case or controversy" when they "derive from a common nucleus of operative fact," *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Promisel v. First Am. Artificial Flowers Inc.*, 943 F.2d 251, 254 (2d Cir. 1991)), and "are such that [the claimant] would ordinarily be expected to try them all in one judicial proceeding. . . ." *Semi–Tech Litig. LLC v. Bankers Trust Co.*, 234 F.Supp.2d 297, 300 (S.D.N.Y. 2002) (quoting *Promisel*, 943 F.2d at 254). Those standards are satisfied here. The Court has core jurisdiction over the claims asserted against the Ditech Defendants in the Complaint. The Plaintiff is asserting the claims in Counts 1, 7, 8 and 9 against Breckenridge and the Ditech Defendants. Thus, those claims derive from the same operative facts, are part of the same controversy, and ordinarily would be tried together in state court. In resolving the Motion, the Court will exercise supplemental jurisdiction over the Breckenridge Claims. *See, e.g.*, *In re Radcliffe*, 317 B.R. 581, 590 (Bankr. D. Conn. 2004) (declining to dismiss plaintiff's third claim for declaratory judgment and constructive trust over debtor's residential property where claim was not core or related to debtor's bankruptcy case as it was exempt from property of the estate, because the court could exercise supplemental jurisdiction over such claim since the claim is based on the same facts and circumstances underlying the first and second claims relating to the purchase of the property).

The Court cannot enter a final judgment in non-core matters without the parties' consent. *See* 28 U.S.C. § 157(c)(2). That consent may be express or implied and must be "knowing and voluntary." *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015). In determining whether that standard is satisfied, a court must consider whether "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case" before the bankruptcy court. *Roell v. Withrow,* 538 U.S. 580, 590 (2003). In making

that assessment a court may undertake "a deeply factbound analysis of the procedural history" in the proceeding. *Wellness*, 575 U.S. at 685.  Here the Court focuses on the parties' pleadings, as the procedural history consists merely of the filing of the Complaint and the Motion.

Under Bankruptcy Rules 7008 and 7012(b), parties must state in their pleadings whether they consent to final adjudication by the bankruptcy court. *See* Fed. R. Bankr. P. 7008 ("In an adversary proceeding before a bankruptcy court, the complaint. . . shall contain a statement that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy court."); Fed. R. Bankr. P. 7012(b) ("Rule 12(b)-(i) FR Civ P applies in adversary proceedings. A responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court."). The Plaintiff failed to include the statement in the Complaint called for under Bankruptcy Rule 7008. However, in the Complaint he invoked the Court's supplemental jurisdiction (Compl. ¶ 5) and asked the Court to issue a final judgment awarding him multiple forms of relief against Breckenridge. *See id.* ¶¶ 199-209. Through that conduct, he plainly consented to the entry of a final judgment by this Court. So did Breckenridge. In the Motion, Breckenridge asserted that the Court lacked core jurisdiction over the adversary proceeding, but plainly consented to the Court entering a final judgment dismissing the Complaint. Both parties were represented by counsel and neither challenged the Court's authority to enter a final judgment resolving the Motion.  Both parties consented to this Court's entry of a final judgment resolving the Motion.

<strong>Discussion</strong>[26]

## The Rule 12(b)(6) Motion

The Court turns to the merits of the Motion. In doing so, the Court first considers whether

the Breckenridge Claims as pled, state grounds for relief against Breckenridge under applicable

law. As explained below, the Court finds that they fail to do so. In considering Breckenridge's

alternative arguments, the Court finds that the Plaintiff cannot cure the pleading deficiencies for

those claims because, in any event, the Plaintiff is collaterally estopped (but not judicially

estopped) from asserting them and because the Plaintiff is a bona fide purchaser who paid value

for the Property. Finally, the Court rejects the Plaintiff's request for leave to file an amended

complaint as futile.

Legal Standards Applicable to Rule 12(b)(6) Motion

Rule 12(b)(6) provides that a party may seek to dismiss a complaint "for failure to state a

claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) motion is

"designed to test the legal sufficiency of the complaint, and thus, does not require the [c]ourt to

examine the evidence at issue." *DeJesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 69 (2d Cir. 1996)

(citing *Carey v. Mt. Desert Island Hosp.*, 910 F. Supp. 7, 9 (D. Me. 1995)); *see also Chance v.

Armstrong,* 143 F.3d 698, 701 (2d Cir. 1998) (noting that under Rule 12(b)(6), the issue "is not

whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer

evidence to support the claims" (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.

1996))). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[26]    The Property is located in San Diego, California, so California law governs the substantive law of this action.
*See Blecher v. Cooperstein (In re Cooperstein),* 7 B.R. 618, 621 (Bankr. S.D.N.Y. 1980) (noting that "rights to
property affixed to realty are governed by the law of the situs of the realty"); *United States v. Certain Parcels of
Land*, 131 F. Supp. 65, 70 (S.D. Cal. 1955); ("[R]ealty is governed by the law of the place where situated-
California.") (citation omitted); CAL. CIV. CODE § 755 (West 1872) ("Real property within this State is governed by
the law of this State, except where the title is in the United States.").

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009) ("*Iqbal*") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)

("*Twombly*")). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a Rule 12(b)(6) motion, a court

must "accept all factual allegations in the complaint as true," even if the allegations are doubtful

in fact. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 309 (2007) ("*Tellabs*"); *see*

*also Twombly,* 550 U.S. at 544.

Courts assess the sufficiency of the complaint in light of the pleading requirements in

Rule 8 of the Federal Rules of Civil Procedure ("Rule 8").[27]  Rule 8(a)(2) provides that a

complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Under Rule 8's "liberal" notice pleading standards,

"the pleader need only set forth a short and plain statement of the claim showing that the pleader

is entitled to relief." *Liquidation Tr. v. Daimler AG (In re Old CarCo LLC)*, 435 B.R. 169, 176

(Bankr. S.D.N.Y. 2010) (citation omitted); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506,

514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading

system, which was adopted to focus litigation on the merits of a claim."). The "short and plain

statement" called for in Rule 8 must provide "enough facts to state a claim to relief that is

plausible on its face." *Twombly*, 550 U.S. at 547. In other words, the plaintiff must plead "factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal,* 556 U.S. at 678. Further, the Court "must consider the complaint in

its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6)

---

[27]    Rule 8 is made applicable herein by Bankruptcy Rule 7008.

motions to dismiss, in particular, documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice." *Tellabs*, 551 U.S. at 322.

Whether The Breckenridge Claims State
Claims For Relief Under Applicable Law

### Count 7 - Cancellation of Instruments

Under California Civil Code section 3412, "[a] written instrument, in respect to which

there is a reasonable apprehension that if left outstanding it may cause serious injury to a person

against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be

delivered up or canceled." CAL. CIV. CODE § 3412 (West 1872). To state a claim to cancel an

instrument under section 3412, the Plaintiff must allege facts demonstrating that "(1) the

instrument is void or voidable due to, for example, fraud; and (2) there is a reasonable

apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's

position." *U.S. Bank Nat'l Assn. v. Naifeh,* 1 Cal. App. 5th 767, 778, 205 Cal. Rptr. 3d 120, 128

(2016), *as modified on denial of reh'g* (Aug. 17, 2016) (citation omitted). *See also Thompson v.

Ioane*, 11 Cal. App. 5th 1180, 1194, 218 Cal. Rptr. 3d 501, 512 (2017).

Plaintiff claims, without asserting any factual support, that the assignments of the Deed

of Trust by MERS to GMAC, and from GMAC to Green Tree, are invalid. *See* Compl. ¶¶ 88, 93,

94, 97, 103, 137, 139.  In resolving the Motion, the Court need not give weight to those

conclusory allegations. *See Iqbal,* 556 U.S. at 686 ("the Federal Rules do not require courts to

credit a complaint's conclusory statements without reference to its factual context."). To state a

claim under section 3412, the Plaintiff  "must provide facts, not mere conclusions, showing the

apparent validity of the instrument designated, and point out the reason for asserting that it is

actually invalid." *Santana v. BSI Fin. Servs. Inc.,* 495 F. Supp. 3d 926, 950 (S.D. Cal. 2020)

(internal quotation marks omitted) (citing *Ephraim v. Metropolitan Trust Co. of California*, 28 Cal. 2d 824, 833, 172 P.2d 501 (1946)).  He has failed to meet that burden.

The documents of record demonstrate that MERS assigned the Deed of Trust to GMAC, and that GMAC assigned the Deed of Trust to Green Tree. *See* Assignment of Deed of Trust; Corporate Assignment of Deed of Trust. The Plaintiff acknowledges that he "received a transfer notice. . . stating the loan was being transferred from GMAC to Green Tree[,]" (Compl. ¶ 20), that as of July 2016, he was aware that "Green Tree. . . was now a part of Ditech" (*id*. ¶ 64), and that he sent payments due under the Deed of Trust to Ditech. *Id.* ¶ 68. The assignments clearly demonstrate that the Deed of Trust was properly transferred to Green Tree. In the Stipulated Judgment, the Plaintiff confirmed the authenticity of the Instruments. *See* Stipulated Judgment at 2. There are no facts of record demonstrating that the Instruments are void or voidable. Moreover, to the extent that the Complaint could be read to plead such facts, the Court will not construe those facts as true in resolving the Motion because they are directly contradicted by the documents of record. *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d 371, 405-406 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings. . . that are contradicted. . . by documents upon which its pleadings rely, or by facts of which the court may take judicial notice.").

The Plaintiff has not, and cannot, state a claim for relief under section 3412 of the California Civil Code. The Court dismisses Count 7 of the Complaint.

### Count 8 – Quiet Title

The Plaintiff contends that Breckenridge's claim to title to the Property, although valid on its face, is invalid and unenforceable because Breckenridge acquired the Property by way of a fraudulent transfer, since Green Tree had no right to sell the Property at the Foreclosure Sale.

Compl. ¶¶ 195, 197. In Count 8, Plaintiff asks the Court to quiet title to the Property now owned by Breckenridge on the grounds that Breckenridge acquired no interest in the Property through the Foreclosure Sale. *Id.* ¶ 198.

Under California law, a complaint to quiet title must be verified and include: (1) a legal description and street address of the subject real property; (2) the title of plaintiff as to which determination is sought and the basis of the title; (3) the adverse claims to the title of the plaintiff against which a determination is sought; (4) the date as of which the determination is sought; and (5) a prayer for the determination of the title of the plaintiff against the adverse claims. *See* CAL. CIV. PROC. CODE § 761.020 (West 1980). The Complaint fails to satisfy those standards.[28] To state a claim to quiet title to the Property, the Plaintiff must demonstrate that he has title to the Property, not that there are weaknesses to Breckenridge's title. *See id.* § 761.020(b) (a complaint to quiet title shall include "[t]he title of the plaintiff as to which a determination under this chapter is sought and the basis of the title."). *See also Thompson v. Ioane*, 11 Cal.App.5th at 1195 ("The plaintiff may recover only upon the strength of his or her own title. . . and not upon the weakness of the defendant's title."). For that reason, it is settled that where, as here, the Foreclosure Sale has occurred, a quiet title action provides no relief to the Plaintiff. *Eng v. Dimon*, No. 11-3173 MMC, 2012 WL 3659600, at *2 (N.D. Cal. Aug. 24, 2012) ("[A] Cause of Action for Quiet Title is an improper means of challenging a foreclosure where, as here, the foreclosure has already occurred."); *Murphy v. Wells Fargo Bank, N.A.*, No. C 10-5837 MMC, 2011 WL 6182422, at *2 (N.D. Cal. Dec. 13, 2011) ("Quiet title is not a viable claim, however, where, as here, a foreclosure and sale already have occurred."); *Lopez v. Chase Home Fin., LLC*, No. CV F 09-0449 LJO GSA, 2009 WL 981676, at *7 (E.D. Cal. Apr. 9, 2009) ("If the

---

[28]   Although Plaintiff styles his Complaint as a "Verified Complaint," the Complaint is not verified. The Court understands that the Plaintiff can cure that defect.

foreclosure is successful, title will change, and the quiet title claim is an improper means to challenge foreclosure.").

The Plaintiff has not, and cannot state a claim to quiet title to the Property. The Court dismisses Count 8 of the Complaint.

**Count 9 - Set Aside Foreclosure Sale**

In support of Count 9, the Plaintiff asserts that Ditech had no authority to foreclose on the Property because the assignments of the Note and Deed of Trust were defective and because the Deed of Trust is void and unenforceable. Compl. ¶¶ 111, 112 [sic]. Plaintiff seeks an order of this Court "that the [Foreclosure] Sale was irregular in that it was legally void and conducted without any right or privilege by the Foreclosing Defendants." *Id.* ¶ 113 [sic]. In California, "[a]fter a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale." *Lona v. Citibank, N.A.,* 202 Cal. App. 4th 89, 103, 134 Cal. Rptr. 3d 622, 633 (2011) (citation omitted). As such, "a challenge to the validity of a trustee's sale is an attempt to have the sale set aside and to have the title restored." *Id.* (citation omitted). To state a claim for such relief a plaintiff must demonstrate that: "(1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering." 202 Cal. App. 4th at 104, 134 Cal. Rptr. 3d at 633 (citations omitted). In other words, to set aside the sale, "debtor must allege such unfairness or irregularity that, when coupled with the inadequacy of price obtained at the sale, it is appropriate to invalidate the sale"; debtor "must offer to do equity by making a tender or

otherwise offering to pay his debt." *Sierra–Bay Fed. Land Bank Ass'n v. Superior Court*, 227 Cal.App.3d 318, 337, 277 Cal.Rptr. 753 (Ct. App. 1991).

The Plaintiff asserts that the sale was improper because the Instruments were without legal effect. However, the Complaint fails to plead facts demonstrating as much. Moreover, the documents of record show that the Deed of Trust was properly assigned to Green Tree and that the Trustee's Deed Upon Sale was delivered to Breckenridge. For these reasons, Plaintiff is unable to assert facts to support a claim to set aside the Foreclosure Sale.

The Court dismisses Count 9 of the Complaint.

**Count 1 - Declaratory Judgment**

In Count 1, the Plaintiff asks this Court to enter a declaratory judgment that the Defendants have no right or interest in the Note, Deed of Trust, or the Property, and a judgment that the Foreclosure Sale to Breckenridge is void and without any force or effect. Compl. ¶ 145.

The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, is procedural not substantive in nature. It offers an additional remedy to litigants. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1977). A request for a declaratory judgment is not an independent cause of action but is rather predicated on the existence and establishment of the other claims. *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 775 (1st Cir. 1994) ("A declaratory judgment is not a theory of recovery."). As discussed above, the Plaintiff has failed to state claims for relief against Breckenridge under Counts 7, 8 and 9. Accordingly, the Plaintiff cannot demonstrate any grounds for a declaratory judgment. *Bates v. Suntrust Mortg., Inc.,* No. 2:13-CV-01402-TLN-DA, 2013 WL 6491528, at *2 (E.D. Cal. Dec. 10, 2013) (noting that "[a] declaratory relief cause of action cannot survive a motion to dismiss when the substantive claims on which it is based are dismissed."); *Muhammad v. Berreth*, No. C 12-02407

CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012) (holding that the plaintiff cannot

demonstrate any grounds for a declaratory judgment and has no valid cause of action under the

Declaratory Judgment Act); *Shalaby v. Jacobowitz*, 138 F. App'x 10 (9th Cir. 2005) (affirming

dismissal because plaintiff failed to plead actual controversy in claim underlying its request for

declaratory relief). The Court dismisses Count 1 of the Complaint.

*          *          *          *

As set forth above, the Court dismisses each of the Breckenridge Claims because Plaintiff

fails to state a claim upon which relief can be granted.  The Court dismisses the Breckenridge

Claims without leave to replead because as a matter of law, Plaintiff cannot plead claims for

relief against Breckenridge under Counts 1, 7, 8 and 9, and because, as explained below, in any

event, the Breckenridge Claims are barred by application of the doctrine of collateral estoppel

and Breckenridge is a bona fide purchaser that took the Property free and clear of any competing

interests.

<u>Application Of The Doctrine Of Collateral Estoppel</u>

A purchaser of property at a trustee's sale may bring an unlawful detainer action under

section 1161a of the California Civil Procedure Code to end any continuing occupancy of the

property believed to be unlawful.  *See* CAL. CIV. PROC. CODE § 1161a(b)(3) (West 1991).[29] A

---

[29]    That section states as follows:

> (b) In any of the following cases, a person who holds over and continues in possession of . . .  real
> property after a three-day written notice to quit the property has been served upon the person, or if
> there is a subtenant in actual occupation of the premises, also upon such subtenant, as prescribed
> in Section 1162, may be removed therefrom as prescribed in this chapter:
>
>> (3) Where the property has been sold in accordance with Section 2924 of the Civil Code,
>> under a power of sale contained in a deed of trust executed by such person, or a person
>> under whom such person claims, and the title under the sale has been duly perfected.

CAL. CIV. PROC. CODE § 1161a(b)(3) (West 1991).

plaintiff pursuing a post foreclosure action under section 1161a(b)(3) must "prove a sale in compliance with the statute [CAL. CIV. CODE § 2924] and deed of trust, followed by purchase at such sale." *Cheney v. Trauzettel*, 9 Cal. 2d 158, 158, 69 P.2d 832 (1937); *see also Old National Financial Services, Inc. v. Seibert,* 194 Cal.App.3d 460, 461 (1987) (same).

On January 23, 2019, Breckenridge commenced the Unlawful Detainer Action in the California Superior Court. *See* Complaint for Unlawful Detainer Action. In support of that action, Breckenridge asserted, among other things, that (i) on January 4, 2019, it became the owner of the Property by purchasing it at the Foreclosure Sale; (ii) its title under that sale has been duly perfected; (iii) the Foreclosure Sale was conducted in compliance with relevant provisions of the California Civil Code; and (iv) Plaintiff's title to the Property, if any, was extinguished by the Foreclosure Sale. *See* Complaint for Unlawful Detainer Action ¶¶ 4-6, 11. In his answer, the Plaintiff denied all the allegations in the complaint, and as an affirmative defense, asserted that "the trustee sale was defective and/or tainted with fraud and thus did not confer clear title to plaintiff." *See* Answer-Unlawful Detainer ¶¶ 2b, 3k. On June 6, 2019, the Plaintiff and Breckenridge entered into the Stipulated Judgment for possession of the Property wherein Plaintiff agreed to surrender possession of the Property to Breckenridge on July 8, 2019, and pay a monetary judgment in Breckenridge's favor. *See* Stipulated Judgment at 1-2.

"Even though a plaintiff's factual allegations must be accepted as true and all reasonable inferences drawn in the plaintiff's favor on a motion to dismiss [pursuant to Rule 12(b)(6)], collateral estoppel will nonetheless bar a plaintiff's claim when the plaintiff's 'factual allegations have been decided otherwise in previous litigation.'" *Poindexter v. Cash Money Records*, No. 13 Civ. 1155, 2014 WL 818955, *3 (S.D.N.Y. Mar. 3, 2014) (quoting *Jacobs v. Law Offices of Leonard N. Flamm*, No. 04 Civ. 7607, 2005 WL 1844642, at *3 (S.D.N.Y. July 29, 2005)); *see*

also *Linden Airport Mgmt. Corp. v. N.Y.C. Econ. Dev. Corp.*, No. 08 Civ. 3810(RJS), 2011 WL

2226625, at *3 (S.D.N.Y. June 1, 2011) ("[I]t is well settled that a court may dismiss a claim on

*res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." (quoting *Sassower v.*

*Abrams*, 833 F. Supp. 253, 264 n.18 (S.D.N.Y. 1993)).

"[The] doctrine of collateral estoppel, or issue preclusion, provides that 'when an issue of

ultimate fact has once been determined by a valid and final judgment, that issue cannot again be

litigated between the same parties in any future lawsuit.'" *United States v. Bhatia*, 545 F.3d 757,

759 (9th Cir. 2008) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). The requirements for

collateral estoppel are: "(1) the issue must be identical to one alleged in prior litigation; (2) the

issue must have been 'actually litigated' in the prior litigation; and (3) the determination of the

issue in the prior litigation must have been 'critical and necessary' to the judgment." *Beauchamp*

*v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016). It is explicit in this

three-prong test that only issues actually litigated in the initial action can be precluded from the

second proceeding under the collateral estoppel doctrine. An issue is actually litigated "[w]hen

[it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is

determined. . . ." *People v. Carter*, 36 Cal. 4th 1215, 1240, 117 P.3d 544, 562 (2005), *as*

*modified* (Oct. 26, 2005).

A stipulated judgment for possession in an unlawful detainer action–like the Stipulated

Judgment–is a final judgment in applying the doctrine of collateral estoppel. *See Malkoskie v.*

*Option One Mortgage Corp.*, 115 Cal. Rptr. 3d 821 (2010) ("*Malkoskie*").[30]  Briefly, in

---

[30]    In support of its collateral estoppel argument, Breckenridge, like the Ditech Defendants in the Ditech Dismissal
Motion, relies heavily on *Malkoskie*, which is a case that used *res judicata* (claim preclusion) and collateral estoppel
(issue preclusion) interchangeably. *Malkoskie,* 188 Cal. App. 4th at  973 n.4. Although separate concepts, *res
judicata* and collateral estoppel share similar elements.  There are three elements to a *res judicata* defense: (1) an
identity of claims, (2) a final judgment on the merits, and (3) privity between parties.  *Tahoe-Sierra Pres. Council,
Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (citing *Stratosphere Litig. L.L.C. v.
Grand Casinos, Inc.,* 298 F.3d 1137, 1143 n.3 (9th Cir. 2002)).  Privity between parties exists when a party is "so

*Malkoskie,* Mariana Malkoskie and Pablo Juarez (the "Malkoskies") defaulted on their mortgage

loan and their property was sold to Wells Fargo at a nonjudicial foreclosure sale.  Shortly

thereafter, Wells Fargo brought an unlawful detainer action against the Malkoskies, who

contested that action. The parties entered into a stipulated judgment in favor of Wells Fargo.  *Id.*

at 824. Notwithstanding the stipulated judgment, the Malkoskies sued Wells Fargo to quiet title

and cancel the trustee's deed and for wrongful foreclosure sale and eviction  *Id.*  The trial court

sustained Wells Fargo's demurrer without leave to amend, and the Malkoskies appealed.  As

relevant, on appeal the issue was whether the stipulated judgment barred the Malkoskies' claims.

*Id.* The court held that it did. It found that the "[p]laintiffs' consent to judgment conclusively

determined the specific factual contentions embraced by the complaint, namely that Wells Fargo

had obtained valid record title pursuant to a nonjudicial foreclosure sale that had been duly

conducted pursuant to statute."  *Id.* at 826. It determined that "[b]y stipulating to judgment

against them, plaintiffs conceded the validity of Wells Fargo's allegations that the sale had been

duly conducted and operated to transfer 'duly perfected' legal title to the property." *Id.* at 827.

The court held that "the unlawful detainer judgment has claim preclusive effect in this action

challenging the validity of Wells Fargo's title."  *Id.* (citing *Vella v. Hudgins*, 20 Cal.3d 251, 255,

572 P.2d 28 (1977)).  Further, it held that because all six claims against Wells Fargo were

premised on the alleged invalidity of the foreclosure sale, they were precluded as a matter of law.

*Id.* at 828.

The Plaintiff had a full and fair opportunity to participate in the Unlawful Detainer

Action. He asserts claims in the Complaint that are identical to those raised and resolved in that

---

identified in interest with a party to former litigation that he represents precisely the same right in respect to the
subject matter involved." *Stratosphere Litig. L.L.C.,* 298 F.3d at 1143 n.3 (internal quotations and citations omitted).
As such, the Court finds *Malkoskie* instructive in assessing Breckenridge's collateral estoppel argument.

action. Title to the Property had to be tried in the Unlawful Detainer Action as it was placed into

issue by the Plaintiff's general denial of the allegations in the Complaint for Unlawful Detainer

Action, and specifically when he asserted the affirmative defenses that "the trustee sale was

defective and/or tainted with fraud and thus did not confer clear title to plaintiff." *See* Answer-

Unlawful Detainer ¶ 3k.  In entering into the Stipulated Judgment, the Plaintiff necessarily

conceded not only that Breckenridge holds proper, legal title to the Property, but that (i) on

January 4, 2019, it became the owner of the Property by purchasing it at the Foreclosure Sale;

(ii) title under that sale has been duly perfected; (iii) the Foreclosure Sale, and all required

notices complied with section 2924 of the California Civil Code; and (iv) Plaintiff's title, if any,

to the Property, that existed prior to the date of the Foreclosure Sale, was extinguished by the

Foreclosure Sale. *See* Complaint for Unlawful Detainer Action ¶¶ 4-7, 11; Stipulated Judgment

at 2. Those concessions preclude the Plaintiff's claims challenging Breckenridge's title to the

Property, and any claim premised on the alleged invalidity of the Foreclosure Sale and

underlying Instruments.

Accordingly, they bar Plaintiff's claim for a declaratory judgment that Breckenridge has

no interest in the Property or underlying Instruments, including the Note and Deed of Trust

(Count 1); and his claims to cancel the Instruments (Count 7), to quiet title to the Property

(Count 8), and to set aside the Foreclosure Sale (Count 9). The Stipulated Judgment resolved, in

Breckenridge's favor, that the foreclosing party had the right to foreclose. Plaintiff is therefore

barred from raising those claims in the Complaint. *See, e.g.*, *Foulkrod v. Wells Fargo Financial

California, Inc.*, No. CV 11–732–GHK (AJWx), 2012 WL 13008150, at *6 (C.D. Cal. Nov. 28,

2012) (finding that collateral estoppel applied to plaintiff's claims predicated on lender's use of

forged signatures because such allegation went to the bank's authority to conduct the foreclosure

sale and convey title, which had been fully determined through the plaintiff's application to

vacate stipulated judgment in the unlawful detainer action).

<u>Application Of The Doctrine Of Judicial Estoppel</u>

Breckenridge misplaces its reliance on principles of judicial estoppel in seeking to

dismiss the Complaint. "[J]udicial estoppel, 'generally prevents a party from prevailing in one

phase of a case on an argument and then relying on a contradictory argument to prevail in

another phase.'" *First Intercontinental Bank v. Ahn*, 798 F.3d 1149, 1154 (9th Cir. 2015) (citing

*New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The elements of the doctrine of judicial

estoppel are: (1) whether a party's later position is "clearly inconsistent" with its earlier position;

(2) whether the party persuaded a court to accept that party's earlier position such that judicial

acceptance of an inconsistent position in another proceeding would create "the perception that

either the first or the second court was misled"; and (3) whether the party seeking to assert an

inconsistent position would derive an unfair advantage on the opposing party if not estopped. *Id.*

at 782-783. Application of the doctrine bars a litigant from asserting inconsistent positions in the

same litigation and in different cases. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d

597, 600-601 (9th Cir. 1996).

Breckenridge asserts that the Plaintiff is judicially estopped from asserting the claims at

issue because he filed the Chapter 13 Case to stay the pending foreclosure sale and obtained the

benefit of the stay, but in doing so, he failed to disclose in his Schedules A/B the claims that he is

asserting in the Complaint. *See* Motion at 2.  The Ditech Defendants made a similar argument in

support of their motion to dismiss. *See* Ditech Dismissal Motion ¶¶ 19-22. They asserted that (i)

the claims in the Complaint arise from the Instruments and pre-date Plaintiff's commencement of

his Chapter 13 Case; (ii) by filing the Chapter 13 Case, the Plaintiff received the benefit of an

automatic stay of the foreclosure action–without disclosing the claims, in his schedules; and (iii) that he has taken an inconsistent position in these Chapter 11 Cases by attempting to sue on those same claims outside of his Chapter 13 Case. *Id*. ¶¶ 21-22.

The Court rejected the Ditech Defendants' application of judicial estoppel on the grounds that they failed to demonstrate that the California bankruptcy court accepted or relied on the information contained in Plaintiff's Schedule A/B for any purpose or that the Plaintiff gained an advantage from the omission of his purported claims against the Ditech Defendants in Schedule A/B. *See* Ditech Memo and Order at 18-20.  That reasoning applies equally here. The Court finds no merit to Breckenridge's argument that the Complaint is barred by principles of judicial estoppel.

Bona Fide Purchaser

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller v. Lien*, 25 Cal. App. 4th 822, 831, 30 Cal. Rptr. 2d 777 (1994) (citation omitted).  The purchaser at a foreclosure sale takes title by a trustee's deed. *Id.*

> If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser.

*Id.* (citations omitted).  Pursuant to section 2924(c) of the California Civil Code:

> A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

CAL. CIV. CODE § 2924(c) (West 2020). Here, there is a presumption that the Foreclosure Sale has been conducted regularly and properly because the Trustee's Deed Upon Sale recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied.  *See* Trustee's Deed Upon Sale at 1-2.[31]

A bona fide purchaser is one who pays value for the property without notice of any adverse interest or of any irregularity in the sale proceedings. *Melendrez v. D & I Inv., Inc.,* 127 Cal. App. 4th 1238, 1249, 26 Cal. Rptr. 3d 413, 423 (2005) (citing *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 442, 129 Cal. Rptr. 2d 436 (2003)).  Breckenridge's qualification as a bona fide purchaser is an affirmative defense to the Breckenridge Claims. *See, e.g., Lynch v. Bank of New York Mellon,* No. CV 17-00195 LEK-RLP, 2018 WL 3624969, at *7 (D. Haw. July 30, 2018). Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper where the "allegations in the complaint suffice to establish" the defense. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted) (citation omitted).  *See*

---

[31]    In relevant part, the Trustee's Deed Upon Sale reads, as follows:

This conveyance is made pursuant to the authority and powers vested in said Trustee, as Trustee, or Successor Trustee, or Substituted Trustee, under that certain Deed of Trust executed by **MICHAEL L. MCCHRISTIAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY** as Trustor, recorded 2/28/2005, as Instrument No. 2005-0159780, of official Records in the Office of the Recorded of **San Diego** County, California; and pursuant to the Notice of Default recorded **11/29/2016, as Instrument No. 2016-0651594**, of Official Records of said County, Trustee having complied with all applicable statutory requirements of the State of California and performed all duties required by said Deed of Trust, including, among other things, as applicable, the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof.

At the place fixed in the Notice of Trustee's Sale, Trustee sold said property above described at public auction on **1/4/2019** Grantee, being the highest bidder at such sale, became the purchased or said property and paid therefore to said Trustee the bid amount **$593,500.00** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

*See* Trustee's Deed Upon Sale at 1-2.

*also ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under 12(b)(6) is improper."). The elements of bona fide purchaser status are: (i) payment of value, in good faith, and (ii) payment without actual or constructive notice of another's rights. *Gates Rubber Co. v. Ulman*, 214 Cal.App.3d 356, 364, 262 Cal.Rptr. 630 (1989). To satisfy the first prong, the buyer need not pay fair market value for the property. *See Melendrez v. D & I Investment, Inc.,* 127 Cal. App. 4th at 1251, 26 Cal. Rptr. 3d at 425 ("The first element does not require that the buyer's consideration be the fair market value of the property (or anything approaching it). Instead, the buyer need only part with something of value in exchange for the property."). *See also Horton v. Kyburz*, 53 Cal.2d 59, 65-66 (1959) (rejecting contention that bona fide purchaser must give "adequate consideration" sufficient to obtain specific performance of a contract.). The second element requires that the buyer have "neither knowledge nor notice of the competing claim." *Melendrez v. D & I Inv., Inc.,* 127 Cal. App. 4th at 1252, 26 Cal. Rptr. 3d at 425. "A person generally has 'notice' of a particular fact if that person has knowledge of circumstances which, upon reasonable inquiry, would lead to that particular fact." *First Fid. Thrift & Loan Ass'n v. All. Bank,* 60 Cal. App. 4th 1433, 1443, 71 Cal. Rptr. 2d 295, 301 (1998).

In the Complaint, Plaintiff pleads that Breckenridge paid value in exchange for the Property at the Foreclosure Sale. *See* Compl. ¶ 114 [sic] (noting that "DITECH, through its agent and employee Clear Recon purportedly 'sold' the Plaintiff's property to BRECKENRIDGE by way of a non-judicial foreclosure 'sale.'"). Plaintiff also refers to the Trustee's Deed Upon Sale executed on or about January 15, 2019, of which the Court takes judicial notice. *Id.* ¶ 185. That deed provides that Breckenridge purchased the Property for $593,500.00 when Plaintiff owed only

$356,373.53 on the Note. *See* Motion ¶ 5; Trustee's Deed Upon Sale at 1. On January 15, 2019,

Breckenridge perfected its title to the Property by recording the Trustee's Deed Upon Sale. *See*

Motion ¶ 5; Trustee's Deed upon Sale at 1.

However, Plaintiff asserts, without support that GMAC did not "effectuate any

assignment of any interest in the Note and Deed of Trust, directly or indirectly, to either [Ditech

Defendants] or the [trust created by Homecomings], or any predecessor in interest to these

entities." Compl. ¶ 103(c). *See also id.* ¶ 86 (claiming that "the 'true sales' never took place,

because the Note and Deed of Trust were already transferred and sold to an as yet unidentified

[t]hird [p]arty in or about December of the year 2005," and "whatever trust acquired it from

Homecomings did not at any time acquire any legal, equitable, and pecuniary interest in

Plaintiff's Note and Deed of Trust from the original lender."). The Court will not construe those

facts as true because they are contradicted by the Instruments cited in the Complaint and filed in

support of the Motion which trace the assignments of the Deed of Trust from Homecomings to

Breckenridge. *See In re Livent, Inc. Noteholders Sec. Litig.,* 151 F. Supp. 2d at 405-406 ("[A]

court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted. .

. by documents upon which its pleadings rely, or by facts of which the court may take judicial

notice.").

The presumption under section 2924 of the California Civil Code that the Foreclosure

Sale was conducted regularly and properly is therefore conclusive. *See Melendrez v. D & I Inv.,*

*Inc.,* 127 Cal. App. 4th at 1254-1255, 26 Cal. Rptr. 3d at 427 (noting that a party's status as a

bona fide purchaser coupled with delivery of a trustee's deed reciting compliance with, and

satisfaction of, all procedural requirements grants the buyer a conclusive presumption that the

sale was properly conducted); *Heinrich v. Ditech Financial, LLC,* No. 1:18-cv-00664-DAD-

SKO, 2019 WL 1004577, at *4 (E.D. Cal. Mar. 1, 2019) ("Pursuant to the notice of trustee's

deed upon sale, of which this court has taken judicial notice, the court agrees that MRO

purchased the Property at the trustee's sale and that MRO is therefore the bona fide purchaser of

the Property. Plaintiffs' FAC does not allege otherwise. As a result, the statutory presumption in

favor of the bona fide purchaser is conclusive.").  As such, Breckenridge acquired its interest in

the Property pursuant to the Foreclosure Sale free and clear of any competing rights at the time

of sale. *See Moeller v. Lien*,  25 Cal.App.4th at 831–832 ("[t]he conclusive presumption

precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the

trustee wrongfully rejected a proper tender of reinstatement by the trustor."); *First Fid. Thrift &*

*Loan Ass'n v. All. Bank,* 60 Cal. App. 4th at 1444, 71 Cal. Rptr. 2d at 302 (noting that "[t]he

question is, therefore, whether [the attorney] has either actual notice of plaintiff's prior claim, or

constructive notice thereof by reason of facts sufficient to put him on inquiry, before he gave

value, that is, before his law firm undertook the obligation to defend [the ranch owner]. If he had

none, then his title is good as against plaintiff, and defendant. . . , his transferee, will likewise

take a title superior to that of plaintiff. . . "). *Cf. Est. of Yates*, 25 Cal. App. 4th 511, 523, 32 Cal.

Rptr. 2d 53, 59 (1994) (affirming the set aside of nonjudicial sale because while "the trustee's

deed recites that all requirements of law have been complied with, 'failure to comply with the

notice requirements is a ground to cancel the sale only as against a party who is not a bona fide

purchaser.'"). The predicate for all the Breckenridge Claims is that Breckenridge's title to the

Property is defective. Breckenridge's status as a bona fide purchaser forecloses those claims.

That is an additional ground for dismissing the Breckenridge Claims with prejudice.

Leave to File Amended Complaint

"[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* (citations omitted). In this circuit, courts deny requests for leave to amend when the amendment would be futile. *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting that "futility" is "grounds on which denial of leave to amend has long been held proper" and that "leave may be denied where amendment would be futile"); *Williams v. Citigroup Inc.,* 659 F.3d 208, 214 (2d Cir. 2011) ("It is well established that leave to amend need not be granted where the proposed amendment would be futile.") (internal quotation marks omitted and citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc*., 106 F.3d 11, 18 (2d Cir.1997)).

Plaintiff maintains that he should be granted leave to amend the Complaint because of alleged "admissions contained in the Defendant's pleadings regarding the nature of the purported relationships by and between the parties, and the identification of a necessary party to the proceedings by the Defendant." Opposition at 2.  He "requests leave to amend the complaint to conform to the Defendant's admissions." *Id*.  Plaintiff further alleges that "[s]pecifically, the Defendant, Ditech admitted that it is NOT the holder or beneficiary of Plaintiff's Note and Deed of Trust, and that it is acting exclusively as the purported 'Loan Servicer,' and not as a Lender. Defendant Ditech has also admitted that it asserts that there is a trustee for the trust that purports

to hold Plaintiff's Note and Deed of Trust. Accordingly, that trustee is a further necessary party to these proceedings." *Id.*

However, Plaintiff cannot cure the fatal deficiencies in this adversary proceeding by amending the Complaint to add the trustee for the trust that purports to hold the Note and Deed of Trust.  At a minimum, joining the trustee will not alter Breckenridge's status as a bona fide purchaser, and will not negate application of the doctrine of collateral estoppel to bar the Complaint. *Wittich v. Wittich*, No. 06-CV-1635 (JFB) (WDW), 2006 WL 3437407, at *7 (E.D.N.Y. Nov. 29, 2006) (finding that there are no allegations that could cure the complaint's infirmities under *res judicata,* denying plaintiff's request to join an indispensable part*y and denying plaintiff leave to replead as it would be futile).* The Court denies the Plaintiff's request for leave to amend the Complaint.

## Motion to Expunge Lis Pendens

Federal courts look to state law in matters pertaining to lis pendens*. See* 28 U.S.C. § 1964.[32] Under section 405.20 of the California Code of Civil Procedure, "[a] party to an action who asserts a real property claim may record a notice of pendency of action [a lis pendens], in which that real property claim is alleged."[33] "A lis pendens is a recorded document giving

---

[32]    Section 1964 states, as follows:

> Where the law of a State requires a notice of an action concerning real property pending in a court of the State to be registered, recorded, docketed, or indexed in a particular manner, or in a certain office or county or parish in order to give constructive notice of the action as it relates to the real property, and such law authorizes a notice of an action concerning real property pending in a United States district court to be registered, recorded, docketed, or indexed in the same manner, or in the same place, those requirements of the State law must be complied with in order to give constructive notice of such an action pending in a United States district court as it relates to real property in such State.

28 U.S.C. § 1964.

[33]    Section 405.20 of the California Civil Procedure Code states, as follows:

constructive notice that an action has been filed affecting title or right to possession of the real property described in the notice." *Park 100 Inv. Group II v. Ryan,* 180 Cal.App.4th 795, 807, 103 Cal.Rptr.3d 218 (2010) (citation omitted). The filing of a lis pendens "clouds the title and effectively prevents the property's transfer until the litigation is resolved or the *lis pendens* is expunged." *BGJ Assocs., LLC v. Superior Court,* 75 Cal.App.4th 952, 967, 89 Cal.Rptr.2d 693 (2d Dist.1999). That is because the effect of a lis pendens "is that anyone acquiring an interest in the property after the action was filed will be bound by the judgment." 75 Cal. App. 4th at 966, 89 Cal. Rptr. 2d at 702.

"At any time after notice of pendency of action has been recorded, any party. . . with an interest in the real property affected thereby, may apply to the court in which the action is pending to expunge the notice." CAL. CIV. PROC. CODE § 405.30 (West 1992). For these purposes, a "real property claim" is "the cause or causes of action in a pleading which would, if meritorious, affect (a) title to, or the right to possession of, specific real property. . . ." *Id.* § 405.4. The Plaintiff bears the burden of coming forward with evidence establishing that the pending action involves a real property claim and that such claim is valid. *Id.* § 405.30. If the court finds "that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim," the court "shall order that the notice be expunged." *Id.* § 405.32. *See also Rey v. OneWest Bank, FSB,* No. 2:12-CV-02078-MCE, 2013 WL 1791910, at *5 (E.D. Cal. Apr. 26, 2013) ("A court should expunge a lis pendens if it determines that the pleading on which the notice is based does not contain a real property claim, or if a real

---

A party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged. The notice maybe recorded in the office of the recorder of each county in which all or part of the real property is situated. The notice shall contain the names of all parties to the action and a description of the property affected by the action.

CAL. CIV. PROC. CODE § 405.20 (West 2004).

property claim as pled lacks evidentiary merit.") (internal quotation marks omitted) (citation omitted).

The Breckenridge Claims are dismissed with prejudice. The Plaintiff is left without a "real property claim" and, as such, cannot establish the "probable validity" of such a claim in this case. Accordingly, the Court grants the Motion to Expunge and expunges the Lis Pendens. *See Silas v. Argent Mortgage Company*, LLC, 1:17-CV-00703-LJO-JLT, 2017 WL 3131057, at *11 (E.D. Cal. July 24, 2017) (granting motion to expunge lis pendens where underlying claims were dismissed, because "the pleading on which the lis pendens was based . . . cannot provide a valid real property claim to support the lis pendens."); *In re Holy Hill Community Church*, 563 B.R. 6, 14 (C.D. Cal. 2017) (affirming expungement of lis pendens where bankruptcy court dismissed underlying claims with prejudice. "California law allows for the expungement of a lis pendens when the claimant has not established by a preponderance of the evidence the probable validity of the real property claim. . . Given the dismissal of Appellants' claims, it stands to reason the claims lacked validity.") (internal quotation marks and citations omitted); *Rey v. OneWest Bank, FSB*, 2013 WL 1791910 at *5 (expunging lis pendens recorded against Plaintiff's property "[s]ince Plaintiff's [complaint] is dismissed without leave to amend, Plaintiff can no longer maintain any claim affecting right or title to possession of the real property described in the notice of lis pendens."); *Cornell v. Select Portfolio Servicing, Inc.,* No. CIV S-11-1462 KJM, 2011 WL 6097721, at *1 (E.D. Cal. Nov. 29, 2011) (granting motion to expunge lis pendens where plaintiff's claims were dismissed because "[o]nce that action has been dismissed, the lis pendens serves no purpose, and thus, must be expunged.").

Breckenridge seeks an award of attorney's fees and costs for bringing the Motion to Expunge. *See* Motion to Expunge at 14. Under section 405.38 of the California Civil Procedure Code, a party that successfully moves to expunge a lis pendens is entitled to an award of reasonable attorney's fees and costs "unless the court finds that the other party acted with substantial justification or that other circumstances make the imposition of attorney's fees and costs unjust." CAL. CIV. PROC. CODE § 405.38 (West 1992). As discussed above, the Plaintiff did not, and could not, plead a real property claim against Breckenridge. Moreover, the Plaintiff did not address, let alone oppose, Breckenridge's fee request. In this light, the Court finds that Breckenridge is entitled to an award of attorney's fees. In support of the Motion to Expunge, Breckenridge submitted a declaration of Seth P. Cox, Esq. (the "Cox Declaration") which addresses Breckenridge's request for fees and costs incurred in bringing the Motion to Expunge.[34] In it, Mr. Cox explains that his billing rate of $450.00 per hour is a "reasonable rate" in the Los Angeles market "for an attorney of [his] experience and skill, in [his] position of Senior Litigation Counsel and Assistant General Counsel" at Breckenridge. *See* Cox Declaration ¶ 3. He explains that he spent four hours drafting the Motion to Expunge and anticipates spending an additional three hours reviewing the opposition papers, drafting a reply, and appearing and arguing this matter at hearing. *Id*. He asserts that a total fee and cost award of $3,210.00 is reasonable. *Id.* ¶ 4. The papers submitted in support of the Motion to Expunge essentially mirror those filed by Breckenridge in support of the 12(b)(6) Motion, except that they include the request to expunge the Lis Pendens. Breckenridge is not entitled to recover the fees and costs that it incurred in prosecuting the Rule 12(b)(6) Motion.  Breckenridge did not file a reply brief in support of the Motion to Expunge, and although the Court had a long calendar on

---

[34]    *See Declaration of Seth P. Cox in Support of Defendant's Motion to Expunge Lis Pendens* [AP ECF No. 6-1].

the date of the hearings on the motions, that portion of the hearing did not last more than 30

minutes. The Court finds that an award of $900.00 in attorney's fees is reasonable.

### Conclusion

Based on the foregoing, the Court grants the Rule 12(b)(6) Motion and dismisses the

Breckenridge Claims with prejudice, and grants the Motion to Expunge and expunges the Lis

Pendens. The Court awards Breckenridge $900.00 for its fees and costs incurred in prosecuting

the Motion to Expunge.

IT IS SO ORDERED.

Dated:  New York, New York
      November 9, 2021

/s/ *James L. Garrity, Jr.*
Hon. James L. Garrity, Jr.
U.S. Bankruptcy Judge